### UNITED STATES ex rel. QUINN v. HUNTER.

No. 9262.

Circuit Court of Appeals, Seventh Circuit.

June 13, 1947.

See also D.C., 64 F.Supp. 653.

John P. Lulinski, and Joseph E. Tobin, Asst. U. S. Attys., J. Albert Woll, U. S. Atty., and William J. Connor, Asst. U. S. Atty., all of Chicago, Ill., for appellant.

Jacob J. Gordon, Robert B. Johnstone, Robert J. Gorman and C. S. Bentley Pike, all of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order of the District Court of the Northern District of Illinois, Eastern Division, entered December 9, 1946, releasing and discharging the relator Raymond G. Quinn in a habeas corpus proceeding. The cause appears to have had its origin in an order entered by the court October 18, 1946, on the application of Quinn to correct a sentence theretofore imposed in cause No. 32351. Subsequently, this cause appears to have been merged in the habeas corpus proceeding. At any rate, it was tried and disposed of as such. At the inception of the proceeding the court appointed as counsel for Quinn four members of the Bar who have ably and energetically represented him in the court below as well as upon this appeal.

At the threshold we are met with the government's urgent contention that the District Court was without jurisdiction to enter the order complained of. Obviously, this contention must first be disposed of, and in so doing there is no occasion to consider or discuss the factual situation further than as it may relate to such question.

Quinn on March 6, 1934, was sentenced to 10 years on a charge of thefts from hall letter boxes in cause No. 27834 (sometimes referred to as the first sentence) in the District Court of the United States for the Northern District of Illinois, Eastern Division. On February 12, 1940, at which time there remained 1,503 days of that sentence to be served, he was conditionally released (paroled) from the United States Penitentiary at Leavenworth, Kansas, where he had been serving that sentence. On August 3, 1940, Quinn was arrested in Chicago by the police of that city. We digress at this point to make reference to one of the highly controverted issues of fact as to whether Quinn was taken into custody at this time on a parole violator's warrant issued by the United States Parole Board, commanding that Quinn be taken into custody and safely returned to the United States Penitentiary at Leavenworth, Kansas, or whether he was arrested for postal violations committed while on parole. In our view, this issue is irrelevant to the jurisdictional question and may be passed at the present. At any rate, shortly subsequent to his arrest new charges were preferred against him before the United States Commissioner. On these charges an indictment was returned against Quinn August 14, 1940, charging him in three counts, in substance, of stealing from the United States mail.

On August 26, 1940, Quinn entered before Judge Barnes a plea of guilty to this charge, upon which plea the court imposed a sentence and judgment of five years' imprisonment (cause No. 32351, sometimes referred to as the second sentence). The judgment order contained the following provision: "It Is Further Ordered that said term of imprisonment run concurrently with the unexpired portion of the sentence imposed on said defendant Raymond G. Quinn, March 26, A.D.1934 in case No. 27834." A mittimus was issued upon this judgment and Quinn was returned to the Penitentiary at Leavenworth. The main legal controversy on what may be termed the merits of the case is whether he was entitled to serve this five year sentence concurrently with the unserved portion of his first sentence (that part unserved at the time of his arrest while on parole). Obviously, he could not have served all of it concurrently for the reason that a period of five years would have extended beyond the unserved portion of his first sentence (1,503 days). The parties are in sharp disagreement on this issue. If Quinn's contention is sound, then it would appear that the Leavenworth Warden was without authority to hold him after the expiration of this five year sentence. On the other hand, if the government's position is accepted, the Warden was authorized after the expiration of the five year sentence to hold him until he had served the remaining portion of his first sentence. Again we are of the view that the controversy on this issue is irrelevant to the jurisdictional question and need not be decided in connection therewith.

This brings us to the inception of the instant proceedings. As already stated, Quinn on September 25, 1946, filed his motion for the correction of the court's judgment of August 26, 1940 (second sentence). On the basis of this motion to correct sentence the court on October 18, 1946, ordered that a "writ of habeas corpus ad subjiciendum issue for said defendant * * * and that motion to correct sentence heretofore imposed herein be and the same is hereby continued to November 12, A.D.1946 for hearing." The court reserved a ruling on the government's motion to dismiss this writ on the ground that it ran beyond the court's jurisdiction. On November 7, 1946, the court issued a writ of habeas corpus ad testificandum to the Warden at Leavenworth, making it returnable on the same day as the writ of habeas corpus ad subjiciendum previously issued. This writ was directed to the United States Marshal for the Northern District of Illinois, who obtained Quinn from the Warden at Leavenworth, "to testify in the case of United States vs. Raymond G. Quinn No. 32351 [the proceeding to correct the judgment]

and that at the termination of said proceedings * * * he return the said Raymond G. Quinn to the Warden of the United States Penitentiary at Leavenworth, Kansas, under safe and secured conduct." Pursuant to the directions of this writ, the United States Marshal procured Quinn for the purpose of so testifying.

The court, treating the motion to correct sentence as a criminal case, then ordered subpoenas duces tecum on James V. Bennett, Director of the Bureau of Prisons, Washington, D. C., Walter A. Hunter, Warden, United States Penitentiary, Leavenworth, Kansas, and T. Weber Wilson, Edward P. Reedy and Douglas P. Lucas, Members of the Parole Board, Washington, D. C., commanding all said parties to appear for the purpose of testifying and giving evidence in the case of United States v. Quinn, and to bring with them all memoranda, documents, records and other papers in their custody and control relating to the incarceration of the defendant Quinn. After Quinn had been produced in court by the United States Marshal pursuant to the writ of habeas corpus ad testificandum, and James V. Bennett, Director of the Bureau of Prisons, and Warden Hunter from Leavenworth had appeared in court pursuant to the subpoenas duces tecum, the court issued writs of habeas corpus ad subjiciendum and had each served with said writs while in the courtroom. Bennett filed a return stating that he did not have Quinn in his custody and that the Warden at Leavenworth who had Quinn legally in his custody had surrendered him to the United States Marshal for the Northern District of Illinois, pursuant to a writ of habeas corpus ad testificandum issued by Judge Barnes, and that Quinn was then in the courtroom, pursuant to that writ. Warden Hunter filed a return stating that he did not presently have custody or control of the body of Quinn, that he had surrendered him to the United States Marshal for the Northern District of Illinois, pursuant to a writ of habeas corpus ad testificandum, which writ directed that, at the termination of the proceedings before Judge Barnes, the Marshal return Quinn to the Warden of the United States Penitentiary at Leavenworth under safe and secure conduct, and further that the said Quinn was present in the courtroom at the time of the issuance of the writ of habeas corpus to which his return was made.

We are of the view that the court was without jurisdiction to entertain Quinn's motion to correct the judgment entered August 26, 1940. We think the five year sentence was valid; in fact, no contention is made to the contrary. The motion to correct was made September 25, 1946, after many terms of court had come and gone. Prior to March 21, 1946, the effective date of the Rules of Criminal Procedure, 18 U.S.C.A. following section 687, it was well settled that the court was without authority to vacate or modify a valid judgment subsequent to the expiration of the term at which it was entered. United States v. Mayer, 235 U.S. 55, 67-69, 35 S. Ct. 16, 59 L.Ed. 129; Robinson v. United States, 10 Cir., 147 F.2d 915; Gilmore v. United States, 10 Cir., 129 F.2d 199. Assuming, without deciding, that the Rules of Criminal Procedure are applicable to a motion directed at a judgment entered prior to their effective date, we are of the further view that they are of no aid to the court's jurisdiction in the instant matter. As stated in United States v. Smith, 67 S.Ct. 1330, 1333: "The Rules, in abolishing the term rule, did not substitute indefiniteness. On the contrary, precise times, independent of the term, were prescribed. The policy of the Rules was not to extend power indefinitely but to confine it within constant time periods."

Treating the judgment sought to be modified as imposing a legal sentence, we think that any modification is limited by Rule 35, entitled "Correction or Reduction of Sentence." This rule, so far as material to such a situation, provides: "The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the Supreme Court denying an application for a writ of certiorari."

The court in the recent Smith case, supra, held that the trial court was empow-

ered to grant new trials only within the time limit fixed by Rule 33. The same reasoning leads us to the view that the court is empowered to correct or modify a sentence only within the time limit fixed by Rule 35.

■■ It may be the direction that the judgment be served concurrently with the unexpired portion of Quinn's first sentence was of no effect; in fact, in a similar situation it was so held. Tippitt v. Wood, et al., 78 U.S.App.D.C. 332, 140 P.2d 689, 692. The holding is on the theory that such a direction constitutes an interference by the court with the authority of the Parole Board. See also Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808. Treating this concurrent direction as unauthorized, it was merely surplusage and did not affect the legality of the five year sentence. Moreover, the sentence having been served, we are unable to discern any reasonable basis on which the court could have entertained jurisdiction to correct it, even though it had been erroneously imposed. And it must be certain that no modification of the judgment could have been made at that late date which would have been of any benefit to Quinn. In view of this situation, it is not strange that the court refused to rule on the government's motion to dismiss the motion to correct the judgment.

■ If the motion to correct the judgment was improperly entertained, as we think it was, it would seem that the subsequent proceedings which presumably were in aid thereof were of no effect. In other words, the court must have had before it a matter of which it had jurisdiction as a basis for its authority to direct the issuance of writs by which Quinn was produced in court and other parties were subpoenaed as witnesses. The government asserts that the court assumed jurisdiction of the motion to correct the judgment merely as a vehicle to be utilized in obtaining the presence of Quinn and the Warden of the Leavenworth Penitentiary within the jurisdiction of the court. The record supplies a reasonable basis for such assertion.

Notwithstanding our view that the motion to correct the judgment was improperly entertained and that the proceedings, which followed were of no effect, we are not content to rest our decision solely upon this premise. We shall now assume for the purpose of the discussion which follows that the court properly entertained the motion to correct the judgment and that the writs were properly issued by which the presence of Quinn and the other parties, especially the Warden, was obtained. Under such circumstances, did the court have jurisdiction to hear and determine the cause of Quinn's restraint in the Penitentiary at Leavenworth?

Sec. 452, Title 28 U.S.C.A., confers upon the court the power to grant writs of habeas corpus "within their respective jurisdictions" for the purpose of inquiring into the cause of restraint of liberty. The petition for habeas corpus filed on Quinn's behalf, as well as the court's findings of fact and conclusions of law, bears witness to the fact that the issue actually tried and decided was the restraint of Quinn at Leavenworth. Obviously, he was not unlawfully restrained by Warden Hunter within the jurisdiction of Judge Barnes. Instead, he was brought into the jurisdiction and was in the custody of the Marshal of the Northern District of Illinois under a writ directed by the court for the express purpose of obtaining his presence as a witness in the proceeding to correct the judgment. Moreover, he was in the custody of the Marshal under a specific command that he be returned to Leavenworth at the termination of such proceeding. Certainly it can not be thought that he was unlawfully restrained of his liberty by the Marshal, and this irrespective of the cause of his restraint at Leavenworth when the latter held him for a special purpose under a writ directed by the court. To conclude otherwise is to reason that the Marshal's authority for restraining Quinn was void and of no effect. If the court had the authority to require the production of Quinn as a witness, it was for the express purpose of testifying necessarily coupled with a direction that he be returned to Leavenworth when that purpose had been accomplished.

The court below evidently proceeded on the theory that it had jurisdiction merely because Quinn and Warden Hunter were

in court. We think something more is required, and that is that the unlawful restraint against which relief is sought must also exist in the territorial jurisdiction of the court. In McNally v. Hill, Warden, 293 U.S. 131, 136, 55 S.Ct. 24, 26, 79 L.Ed. 238, the court in discussing habeas corpus stated: "The purpose of the proceeding defined by the statute was to inquire into the legality of the detention * * *." In Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857, 857, the court enumerates the formal requirements of a petition for habeas corpus, among which "it should establish the jurisdiction of the court by showing the place of petitioner's confinement, that it is within its territorial jurisdiction." In Jones v. Biddle, 8 Cir., 131 F.2d 853, 854, the court held that the writ must be directed to the person who has the physical custody of the prisoner "within the territorial jurisdiction of the court," and that the "person making the return must produce the body of the petitioner before the judge who granted the writ." See also Ex parte Rosier, 76 U.S.App.D.C. 214, 133 F.2d 316, 324. In the instant case, as already pointed out, Quinn was at all times while within the jurisdiction of the court in the custody of the United States Marshal and at no time in the custody of the Warden of the Leavenworth Penitentiary.

In United States ex rel. Belardi v. Day, 3 Cir., 50 F.2d 816, a District Judge of New Jersey directed a writ beyond his jurisdiction to the Commissioner of Immigration at the port of New York. The Commissioner responded to the writ by producing the petitioner in the court from whence the writ had issued. The Court of Appeals held the District Court was without power to issue the writ and that it acquired no jurisdiction by reason of the fact that the parties appeared in court in response thereto. The court stated (3 Cir., 50 F.2d at page 818): "Thus, at most, the Commissioner responded to the mandate of the writ qualifiedly, that is, he made a special appearance and a qualified production of the relator, neither of which acts could confer jurisdiction on the District Court or otherwise validate what theretofore was invalid."

This statement is pertinent to the instant situation where Quinn and Warden Hunter were in court for a limited and qualified purpose, that is, to give testimony in a proceeding then pending. Moreover, the Marshal had custody of Quinn under the court's direction that he be returned to Leavenworth at the termination of the pending matter.

In Sanders v. Brady, D.C., 57 F.Supp. 87, 88, the court considered a situation somewhat similar to the instant one. There, the defendant had been sentenced by the District Court of Maryland to a term of imprisonment which he was serving in the Atlanta Penitentiary. The prisoner was brought into the jurisdiction of the court as a witness in another case under a writ of habeas corpus ad testificandum. During the pendency of that case the prisoner filed a petition for habeas corpus. The return filed by the Warden and the Marshal was similar to that filed in the instant case, that is, that the prisoner was in the custody of the Marshal by authority of the writ of habeas corpus ad testificandum. The court, in holding that it was without jurisdiction, pointed out that while the prisoner was physically present within the District, "the cause of his temporary detention in this District is not under the original sentence of this court but is by virtue of the subsequent and particular order of the court bringing him here as a witness. In other words, the authority for his detention here is not directly due to the sentence of this court but to the subsequent order of this court bringing him here for the particular purpose." To the same effect is United States ex rel. Patterson v. Brady, D.C., 57 F.Supp. 93.

In Downey v. United States, 67 App.D.C. 192, 91 F.2d 223, a prisoner was brought before the District Court from another jurisdiction under a writ of habeas corpus ad prosequendum, and while in the custody of the Marshal filed a petition for habeas corpus seeking his dicharge. The Marshal's return to the writ set forth the facts as to the circumstances and manner of the prisoner's detention. A demurrer was overruled as to this answer, and the Court of Appeals in sustaining such rul-

ing stated (67 App.D.C. 192, 91 F.2d at page 227): "The demurrer was properly overruled and the writ properly discharged. The demurrer admitted the facts stated in the return and answer, and these facts, that the marshal was holding the appellant not under the commitment issued pursuant to the sentences, but under the writ of habeas corpus ad prosequendum, were a valid defense to the appellant's own writ."

It is sought here to distinguish the Downey case on the ground that the Warden of the Penitentiary was not a 'party while in the instant case the Warden of Leavenworth was present in court and served with process. We think there are two reasons why the distinction is without effect, (1) that Quinn, as already shown, was not in the custody of Warden Hunter while in the jurisdiction of the court, and (2) that Warden Hunter, like Quinn, was present under the command of the court for the limited and qualified purpose of being a witness.

No case is cited and we find none which comes close to sustaining Quinn's contention that the court acquired jurisdiction of Warden Hunter in the habeas corpus proceeding. As already pointed out, Quinn was at no time in the custody of the Warden while in the presence or in the jurisdiction of the court, but even though such had been the case, the legal restraint which was charged and found was imposed outside of the court's jurisdiction. Of more importance, however, is the fact, so we think, that the Warden was immune from service while in the jurisdiction of the court under the existing circumstances. The case most strongly relied upon by Quinn in support of his contention that the Marshal had no such immunity is that of Lamb v. Schmitt, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720. There, it was held that an attorney who was in voluntary attendance at the trial was not immune from service of process commanding his continued presence in aid of legislation then pending. The court stated (285 U.S. at page 226, 52 S.Ct. at page 318, 76 L.Ed. 720): "Nor can it be doubted that the petitioner here, notwithstanding his presence as an attorney and officer of the court in the conduct of the principal cause,

was not immune from the service of process in a summary proceeding to compel restoration of the subject matter of the suit wrongfully removed from the custody of the court."

Again the court stated (285 U.S. at page 228, 52 S.Ct. at page 319, 76 L.Ed. 720): "The test is whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it."

In the Lamb case, the attorney was not brought in to court for a special purpose by the court's writ. He was there vountarily. In contrast, Warden Hunter was in court because of the court's writ commanding his presence and he was there for the special and limited purpose of becoming a witness in the proceeding then pending. It is apparent, so we think, that there is not the slightest support in the Lamb decision for Quinn's contention. It is settled that the court could not properly have directed its writ of habeas corpus to the Warden while outside its territorial jurisdiction. United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 136 F.2d 935. What actually happened, however, was that the court proceeded to do indirectly what it had no jurisdiction to do directly. If the procedure followed in the instant case be approved, we see no reason why a District Court could not decide the cause of the restraint of a person confined in any penal institution in the United States. It can enlarge the jurisdiction which Congress has conferred by the simple expedient of having a Warden and his prisoner subpoenaed and produced as witnesses in any pending cause. Having thus obtained their presence, the court may ignore the case in which they were commanded to appear as witnesses and proceed to inquire into the legality of the restraint in some other jurisdiction.

Having concluded that the court was without jurisdiction, we find no occasion to discuss or decide any of the other numerous questions presented, including the cause of Quinn's restraint by the Warden of the Leavenworth Penitentiary. The order appealed from is reversed and

remanded, with directions that it be vacated and set aside and that the United States Marshal for the Northern District of Illinois be directed to take custody of Quinn and return him to the Warden of the United States Penitentiary at Leavenworth, Kansas, in accordance with the terms of the writ by which his presence in the Northern District of Illinois was procured.