**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Stojilko KAJEVIC, Defendant-Appellee.**

No. 82–1573.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1983.

Decided June 29, 1983.

Rehearing and Rehearing En Banc Denied Aug. 1, 1983.

Michele E. Smith, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellant.

Barry A. Spevack, Chicago, Ill., for defendant-appellee.

Before PELL and POSNER, Circuit Judges, and JAMESON, Senior District Judge.*

POSNER, Circuit Judge.

This appeal presents the question—which however we find unnecessary to decide—whether a federal district judge has the power under Rule 35(b) of the Federal Rules of Criminal Procedure to reduce a criminal sentence more than 120 days after the sentence has become final.

The defendant, who was the leader of a group of anti-Yugoslavian terrorists, was convicted of several offenses involving explosives; and on June 22, 1979, Judge Will sentenced him to 12 years in prison followed by 5 years on probation. This court affirmed the conviction. Certiorari was denied on April 20, 1981; and on August 7—109 days later—the defendant filed a motion under Rule 35(b) to reduce his sentence. With the clock ticking and Judge Will out of town, counsel for defendant appeared before Judge McGarr on August 17. The government agreed not to raise any jurisdictional objection before Judge Will, so Judge McGarr scheduled a hearing before Judge Will for September 15. At

the hearing, which was delayed until November 5, the defendant's counsel told Judge Will that the Parole Commission had just denied the defendant's request for parole and had recommended that the defendant remain imprisoned for the maximum period because of the gravity of his crimes. Judge Will said he wanted to see the Commission's report and the transcript of the parole hearing before he acted on the defendant's motion to reduce sentence. These and other materials were submitted to the court later in November, and on March 3, 1982—almost a year after certiorari had been denied—Judge Will ordered the defendant's prison sentence reduced to 10 years. The government has appealed this order under 28 U.S.C. § 1291. *United States v. Hetrick,* 644 F.2d 752, 754–55 (9th Cir.1980).

Rule 35(b) provides, "The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction." These time limits cannot be enlarged. Fed.R.Crim.P. 45(b). If Rule 35(b) means what it says, Judge Will had no power to order the defendant's sentence reduced, because his order came more than 120 days after the Supreme Court denied certiorari; and since the time limit is jurisdictional, *United States v. Ellenbogen,* 390 F.2d 537, 541 (2d Cir.1968), it makes no difference that the government acquiesced in the judge's disregard of it.

Before 1944, when the Federal Rules of Criminal Procedure were promulgated, a court could not modify its judgment after the expiration of the term of court in which the judgment had been entered. *United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931); *United States v. Ellenbogen, supra,* 390 F.2d at 540. Hence criminal defendants sentenced late in

the term had less chance of getting their sentences reduced than defendants sentenced early in the term, because the judge had less time in which to act on their motions. Rule 35(b) changed this by giving the judge 60 days from the imposition of sentence within which he could act. The background and language of the rule suggested that the limitation was on when the judge could act rather than on when the defendant could file, so it is not surprising that this court, three years after the promulgation of the rule, held that "the court is empowered to correct or modify a sentence only within the time limit fixed by Rule 35." *United States ex rel. Quinn v. Hunter,* 162 F.2d 644, 648 (7th Cir.1947). *Hunter* was cited approvingly in *United States v. Robinson,* 361 U.S. 220, 226, 80 S.Ct. 282, 286, 4 L.Ed.2d 259 (1960). Then in 1966 Rule 35(b) was amended to change the 60-day limit to 120 days. The Notes of the Advisory Committee explain, "The 60-day period is frequently too short to enable the defendant to obtain and file the evidence, information and argument to support a reduction in sentence. Especially where a defendant has been committed to an institution at a distance from the sentencing court, the delays involved in institutional mail inspection procedures and the time required to contact relatives, friends and counsel may result in the 60-day period passing *before the court is able to consider the case."* The passage we have italicized suggests that the Committee thought that the 60-day limitation (and the 120-day limitation that replaced it) was a limitation on the power of the court to act.

Rule 35(a) is also informative on the issue. It provides, "The court may correct an illegal sentence *at any time* and may correct a sentence imposed in an illegal manner *within the time provided herein for the reduction of sentence."* (Emphasis added.) This language suggests that the draftsmen realized that Rule 35(b) put tight constraints on the power of sentencing judges to reduce sentence, and thought these constraints too confining when the sentence was illegal. Hence with regard to such a sentence the judge was allowed to act without limit of time. This provision would have been less appropriate if all Rule 35(b) had done was to require the defendant to file his motion within 120 days after the sentence became final.

Although some of the courts of appeals described the 120-day limitation as we had in *Hunter,* as a limitation on the court's power, see, e.g., *United States v. Olds,* 426 F.2d 562, 565 (3d Cir.1970); *United States v. Kahane,* 527 F.2d 491 (2d Cir.1975); *United States v. Norton,* 539 F.2d 1082 (5th Cir.1976), by 1978 many were treating it as a limitation on the period for filing the motion for Rule 35(b) relief—including the courts of appeals for the Third and Fifth Circuits, which previously had seemed to follow the approach of *Hunter.* See *United States v. Janiec,* 505 F.2d 983, 985 n. 2 (3d Cir.1974); *United States v. United States District Court,* 509 F.2d 1352, 1356 (9th Cir.1975); *United States v. Stollings,* 516 F.2d 1287, 1289–90 (4th Cir.1975); *United States v. Williams,* 573 F.2d 527, 529 (8th Cir.1978); *United States v. Mendoza,* 581 F.2d 89 (5th Cir.1978) (en banc). In *Stollings* (which became the leading case), where the motion was filed on the 119th day and ruled on five days later, the court said it would subject defendants to "devastatingly and arbitrarily fortuitous" consequences to hold that the judge had acted beyond his jurisdiction. 516 F.2d at 1288. Our decision in *United States v. Braasch,* 542 F.2d 442 (7th Cir. 1976), treated the 120-day limitation as a limitation on the time for filing the motion rather than on the time for acting on it, but the issue of which it was was not discussed and apparently had not been raised.

Then came *United States v. Addonizio,* 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979), where a unanimous Supreme Court stated, "Federal Rule Crim. Proc. 35 now authorizes District Courts to reduce a sentence within 120 days after it is imposed or after it has been affirmed on appeal. The time period, however, is jurisdictional and may not be extended." (Footnotes omitted.) This was dictum. The question before the Court was not whether

a district judge could ever reduce sentence after 120 days but whether actions taken by the Parole Commission after sentencing that had the effect of making the defendant's period of imprisonment longer than the district judge had expected it to be were a proper basis for a collateral attack on the sentence under 28 U.S.C. § 2255. The Court held they were not. En route to this conclusion it stated, right after the passage quoted above, "The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term .... To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts." 442 U.S. at 190, 99 S.Ct. at 2243. This passage suggests that the reference to the 120-day limitation in Rule 35(b) was not a casual observation but an organic part of the Court's reasoning. That the judge could not act after 120 days was some indication that Congress wanted to confine release determinations to the Parole Commission. If the judge could sit on a motion filed within 120 days until he saw what the Parole Commission intended to do, as he did here, the Court's conclusion would be undermined. If the Parole Commission had not taken a hard line with Kajevic, Judge Will probably would have let his original sentence stand. By reducing the sentence after learning of the Commission's action he intervened in the release determination. Only the view that the 120-day limit is a limit just on the time to file allowed him to do this.

Three circuits, disregarding the dictum in Addonizio, continue to follow Stollings. See Government of Virgin Islands v. Gereau, 603 F.2d 438, 442 (3d Cir.1979); United States v. Smith, 650 F.2d 206, 209 (9th Cir.1981); United States v. DeMier, 671 F.2d 1200, 1205–06 (8th Cir.1982). Another has joined them in dictum. See United States v. Rice, 671 F.2d 455, 459 n. 5 (11th Cir.1982). But all are circuits that followed Stollings before Addonizio was decided. (The Eleventh Circuit in Rice cited the Fifth Circuit's pre-Addonizio decision in Mendoza, a binding precedent in the Eleventh Circuit since it preceded the creation of that circuit out of the Fifth Circuit by mitosis.) The District of Columbia Circuit has expressed skepticism about the continued validity of Stollings after Addonizio. See United States v. Pollack, 655 F.2d 243, 246 (D.C.Cir.1980). And this circuit, in United States v. Inendino, 655 F.2d 108 (7th Cir.1981), intimated that the 120-day limitation is indeed a limitation on the judge's power to act, and not just on the defendant's time for filing his motion. "Rule 35 does not refer to any time period during which a defendant must make his motion to reduce sentence. It imposes instead a limit on the time during which the sentencing judge may act to reduce the sentence. This time limit is jurisdictional [citing Addonizio and, in a footnote, Hunter], and it may not be extended at the discretion of the district court." Id. at 109 (footnotes omitted). "A defendant can easily avoid a situation such as occurred in this case by filing his Rule 35 motion within the first sixty days after sentencing. The court would then have adequate time to decide the motion before the expiration of its jurisdiction ...." Id. at 110 (footnotes omitted and emphasis added).

Although Hunter and Inendino did not involve timely Rule 35(b) motions and hence are distinguishable from the Stollings line, their reasoning applies to timely motions. In addition, the background and language of Rule 35(b), the Notes of the Advisory Committee, Addonizio, and the importance of having clear jurisdictional criteria point to the same conclusion: the district judge loses jurisdiction after 120 days. While Judge Will's absence when the motion was filed, and the government's acquiescence in his acting after the expiration of the 120 days, are regrettable, it is hard to understand why the defendant's counsel waited till the 109th day after the denial of certiorari to file his motion for reduction of

sentence. He had plenty of time. The sentence had been imposed almost two years before the Supreme Court denied certiorari and more than two years before the Rule 35(b) motion was filed.

Against the literal reading of Rule 35(b) it can be argued that a malevolent district judge might simply sit on the defendant's motion till the 120 days expired, which would have the effect of automatically denying the motion. But since all courts agree that the judge loses jurisdiction after an unreasonable time, the malevolent judge need only wait long enough and the same result will be accomplished. The extremely limited appellate review of an order denying a Rule 35(b) motion has a bearing here. "Since the motion for reduction of sentence is a plea for leniency, decision on the motion is as close to being a matter of pure discretion as any other under the Rules, with the exception of the sentence itself." 8A Moore's Federal Practice ¶ 35.02[4] at p. 35-7 (1982); see *United States v. Dewald,* 669 F.2d 590, 592 (9th Cir.1982). If a judge is determined to deny a Rule 35(b) motion he need not resort to sitting on it; a timely denial without reasons will be, for all practical purposes, unreviewable.

A more serious problem than malevolence is time. The problem is not only that district judges are busy—120 days can pass in a wink—but that if the Rule 35(b) motion raises factual questions that require a hearing to resolve, it may be impossible to hold the hearing and act on the motion within 120 days even if the motion is filed at the very outset of the period. It is this practical problem that explains the decisions that in effect rewrite the rule. But if 120 days is not enough, or if there should be no limit on the time within which the judge can act, as there is none under Rule 35(a), the rule ought to be rewritten by those who have the authority to do so; the courts of appeals do not. The argument that a court should rewrite a statute because the legislature lacks the time to do so is of dubious propriety at best; it is particularly questionable when one is dealing with a rule promulgated by the Supreme Court subject to congressional veto. Such a rule can be amended more easily than a statute can.

The placing of some time limitation on the court and not just on the movant cannot be dismissed as inadvertent. The limitation can be seen as necessary to keep the sentencing judge's and the Parole Commission's functions distinct. With no limitation of time the judge may be tempted to wait to see what the Parole Commission does before he acts on the motion. But we know from *Addonizio* that this is an improper temptation, for it is a temptation to intervene in the release determination and that is the Parole Commission's responsibility rather than the sentencing judge's.

We realize that limiting the time within which the district judge can act on a Rule 35(b) motion could create a genuine hardship if the judge became incapacitated before he could act on it, and his incapacity lasted till after the 120 days had run. But Rule 35(b) gives the power to reduce sentences to the "court," not a particular judge thereof, so another judge would have the power to act in the place of the sentencing judge if the latter was unavailable.

█ Although as should be evident by now we have serious doubts whether a district judge can ever reduce a sentence under Rule 35(b) after the 120-day time limit has passed, we are reluctant to hold that he cannot. Such a holding would both create a conflict with other circuits and disrupt what has become common practice among the district judges of this circuit. Fortunately a narrower ground of decision is available in this case. The circuits that hold that the judge's power to reduce a sentence under Rule 35(b) is not circumscribed by the 120-day limitation in the rule also hold that he must act within a reasonable period, which depends on the particular circumstances of the case. See, e.g., *Stollings, supra,* 516 F.2d at 1289-90. Judge Will's delay in acting on Kajevic's motion was unreasonable in the circumstances, for a reason made clear by *Addonizio:* the judge waited to act till he could see what the Parole Commission would do. By delaying for this reason, and eventually reducing sentence when he

found out that the Parole Commission was not disposed to show any lenity, Judge Will was intervening in the release determination, which the Supreme Court held in *Addonizio* is the responsibility of the Parole Commission rather than of the sentencing judge. When a district judge delays action on a Rule 35(b) motion till long after the expiration of the 120 days, for the purpose or with the likely effect of assuming the function of the parole authorities, his delay is unreasonable. However flexibly interpreted, the time limitation in Rule 35(b) has as one of its purposes "to assure that the district court's power to reduce a sentence will not be misused as a substitute for the consideration of parole by the Parole Board." *Stollings, supra,* 516 F.2d at 1289.

The judgment must therefore be reversed with directions to vacate the order reducing sentence, even if *Stollings* is good law in this circuit. But we have thought it important to express our doubts that it is good law, so that the district judges and defense bar of this circuit will be warned that some members of this court, at least, have those doubts, though finding it unnecessary in the present case to resolve them.

REVERSED.