**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Brett C. KIMBERLIN,**
**Defendant-Appellant.**

**Nos. 83–3058, 85–1282.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1985.

Decided Nov. 4, 1985.

Rehearing and Rehearing En Banc
Denied Dec. 30, 1985.

Donald V. Morano, Chicago, Ill., for defendant-appellant.

Kennard P. Foster, U.S. Atty's. Office, Indianapolis, Ind., for plaintiff-appellee.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Among Brett Kimberlin's many convictions are two for receiving explosives, which felons may not do. 18 U.S.C. § 842(i)(1). One count charged Kimberlin with receiving blasting caps, the other with receiving a plastic explosive. The district court sentenced Kimberlin in 1981 to concurrent terms of five years' imprisonment, terms that run consecutively to other terms imposed in Indiana and Texas for dealing in drugs. We affirmed the explosives convictions by an unpublished order, and on April 18, 1983, the Supreme Court denied Kimberlin's petition for certiorari, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 (1983).

Kimberlin filed a motion 116 days later, on August 12, 1983, seeking a reduction of sentence under Fed.R.Crim.P. 35(b). He argued that he had begun to cooperate with the government and should receive a reward. The government opposed the motion—ungratefully, if one believes Kimberlin, although the government's position is that Kimberlin has never provided it any help concerning his dealings in explosives and that to the extent he has offered other aid he should direct his plea to the Parole Commission rather than the court. Kimberlin also filed a motion to disqualify Judge Steckler, who had sentenced him. On August 23 Judge Steckler stepped aside. By now 127 days had passed since the denial of certiorari, or seven days more than the 120 provided by Rule 35(b). No one drew the question of timeliness to the attention of Judge Dillin, to whom the case had been reassigned. On November 8 Judge Dillin denied the motion, concluding that Kimberlin had not "presented any facts which warrant a reduction or modification" of the sentence.

The parties have debated the merits of this decision with great vigor on appeal. Kimberlin also argues that Judge Dillin was biased against him, so that the case should be remanded for a fresh ruling by still a third judge. We conclude, however, that we cannot reach the merits. *Gaertner v. United States*, 763 F.2d 787 (7th Cir. 1985), holds that the version of Rule 35(b)

in effect until August 1, 1985, gives judges only 120 days in which to act, and that this is a jurisdictional limit that may not be extended. The Rule said that the court "may reduce sentence within 120 days" after the denial of certiorari, and *Gaertner* holds that the Rule meant what it said. See also *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979) (dictum); *United States v. Kajevic*, 711 F.2d 767 (7th Cir.1983), *cert. denied*, 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984). The district court's power to act on Kimberlin's motion under Rule 35(b) therefore ended on August 16, 1983.

*Gaertner* was decided on June 3, 1985, and the question naturally arises whether that decision is retroactive. The answer is yes. *Gaertner* held that the time limit of Rule 35(b) limits the subject matter jurisdiction of the district court. Because the power of the court, rather than the wisdom of its exercise, was at stake, it does not matter when *Gaertner* came down. "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). See also *De La Rama Steamship Co. v. United States*, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422 (1953); *Bruner v. United States*, 343 U.S. 112, 116–17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952).

Two amendments to Rule 35 present a more difficult question of retroactivity. On November 1, 1986, § 215(b) of Pub.L. 98–473, 98 Stat. 2031, goes into effect. This statute prescribes a new Rule 35, under which a district court will have discretion to reduce a sentence only if the government so recommends in light of the defendant's cooperation. In the absence of such a recommendation, the court will be able to reduce a sentence only if it is illegal or the court of appeals orders a reduction. An interim rule effective August 1, 1985, however, was designed to upset *Kajevic*, the dictum in *Addonizio*, and perforce *Ga-*

*ertner*. It states that if the defendant files a motion within 120 days after the denial of certiorari, the court may decide the motion "within a reasonable time." This rule is not a reason to reconsider *Gaertner;* the court was aware of the change that would apply after August 1. See 763 F.2d at 789 n. 2, 795 n. 9. It is possible, however, that the new rule should be treated as if in effect before August 1, 1985.

■ A court generally applies the law governing at the time of its decision, and if the law changes while the case is on appeal the appellate court applies the new rule. *Bradley v. School Board*, 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2016–18, 40 L.Ed.2d 476 (1974). There must be a rule of decision, and the one in force at the time the court disposes of the case is the one the legislature deems best for adjusting entitlements. In *Bradley* the question was whether the school board or the plaintiffs who sued to obtain relief from racial discrimination would bear the legal fees of the litigation. The costs were sunk; the new law determined who should bear bygone costs; and the Court held that the fees could be shifted to the defendants even though much of the expense had been incurred before the statute became effective.

This approach may seem to overlook the effects the old rule had on how people governed their own affairs. A rule designed to influence how people behave cannot have much effect on behavior that occurred before the rule changed. Compare *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed. 2d 202 (1982), with *United States v. Peltier*, 422 U.S. 531, 538–42, 95 S.Ct. 2313, 2317–20, 45 L.Ed.2d 374 (1975). It is hard to condemn under a new rule the conduct of people who conformed to the old one. But the application of the new rule does not always penalize conforming conduct. In *Bradley* the new rule encouraged plaintiffs in civil rights cases to spend more in legal fees. The application of the fee-shifting rule to the *Bradley* case itself, however, did not penalize any conduct. Had the plaintiffs known

from the beginning of the litigation that they could obtain an award of fees, they would have poured more legal time into the case, and the defendants either would have settled on the plaintiffs' terms or paid even more than they did.

■ Some provisions of the constitution, from the takings clause and the contracts clause to the ex post facto clause and the due process clause, are designed to deal with retroactive applications of new rules that could penalize detrimental reliance on old rules. These doctrines hardly apply to a case such as this, in which a retroactive application of the new rule would enlarge Kimberlin's entitlements. They are important, however, because the concerns that underlie them also led to a rule of statutory construction, sometimes called the vested rights doctrine, that limits the retrospective application of new statutes. See *Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2020 (describing the principle that new rules do not ordinarily apply to "a right that had matured or become unconditional"). The question whether a law applies retrospectively is one of statutory construction, see *Carlton v. Baww, Inc.,* 751 F.2d 781, 787 n. 6 (5th Cir.1985), and we recur to the tools of this trade even though retrospective application of the interim Rule 35(b) would not violate any entitlements.

■ The vested or matured rights approach to statutory construction often applies to entitlements that turn on the passage of time. For example, if a statute of limitations sets a period of two years, a subsequent statute setting a period of five years presumptively would not apply to a claim that became barred under the old law before the new one was enacted. E.g., *Herm v. Stafford,* 663 F.2d 669, 683 & n. 20 (6th Cir.1981); *Davis v. Valley Distributing Co.,* 522 F.2d 827 (9th Cir.1975), *cert. denied,* 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977); *James v. Continental Insurance Co.,* 424 F.2d 1064 (3d Cir.1970). And the Supreme Court has used the same approach when dealing with changes in jurisdictional rules. An expansion of the court's jurisdiction *can* revive a claim, see

*Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 607 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978), but the outcome is sufficiently unusual that the legislature should say so pretty clearly before a court will conclude that the statute produces this effect. E.g., *Davidson Bros. Marble Co. v. United States ex rel. Gibson,* 213 U.S. 10, 29 S.Ct. 324, 53 L.Ed. 675 (1909); *Stephens v. Cherokee Nation,* 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041 (1899). Cf. *United States v. Sioux Nation,* 448 U.S. 371, 395–407, 100 S.Ct. 2716, 2731–2736, 65 L.Ed.2d 844 (1980).

The former Rule 35(b) contained a time limit, a limit that had expired long before the new Rule 35(b) allowed district courts to reduce sentences a "reasonable" time after the expiration of the 120-day period. Our case does not fit readily into the category of matured rights; to apply the vested rights doctrine mechanically would be a mistake, because no private party acquired entitlements under or acted in reliance on a time limit. Yet we think that the nature of the new rule—which expands a time limit even though not to the detriment of any private party—nonetheless calls for prospective application in the absence of any contrary indication in its language or genesis (and there is none).

The time limit in Rule 35(b) mediates between competing aims: the time must be long enough to allow the judge to reduce a sentence if he is so disposed, and it must be short enough that the judge's power does not duplicate the discretion of the Parole Commission. *Addonizio* emphasized the need to terminate the judge's continuing power to review the prisoner's case; sooner or later (and 120 days from the denial of certiorari is closer to later than to sooner in many cases) the question how much of a lawful sentence the defendant should serve is for the executive rather than the judicial branch. We concluded in *Gaertner* that the line of demarcation between judge and parole officials had been fixed by the rule at 120 days; those who amended Rule 35(b) concluded that the judge should have a little extra time (a "reasonable" amount)

past the 120 days if necessary to make a decision.

We may assume without deciding that had the new rule been in effect in 1983, Judge Dillin's order of November 8, 1983, would have been within a "reasonable" time after the filing of the motion. But the purpose of this small though elastic extension in the rule would not be served by remanding to allow a third judge in 1985 to revise Kimberlin's sentence in response to a motion filed in 1983. Kimberlin wants the court to look at things that happened well after he was sentenced back in 1981. The Advisory Committee's conclusion that a "reasonable" amount of time after the 120-day period does not trench unduly on the powers of parole officials does not imply that a retroactive application of the rule, which would allow the reopening of motions filed years ago, also is appropriate. We therefore conclude that the interim Rule 35(b) applies only to decisions a district court makes after August 1, 1985, and before November 1, 1986.

The only other issue that requires discussion is Kimberlin's claim that the district judge should have corrected an illegal sentence, which may be done under Rule 35(a) at any time. Judge Steckler initially imposed concurrent sentences for the two counts of receiving explosives. Kimberlin argued that because he had received two kinds of explosives in a single transaction, he had committed but a single offense. The government agreed with this argument, and in response to a motion distinct from the one we discussed above, Judge Dillin merged the two counts into a single conviction. This substitutes one term of five years' imprisonment for two concurrent terms of five years' imprisonment. Kimberlin says that he should have been resentenced from scratch, because Judge Steckler thought that Kimberlin had committed two crimes. Each had a maximum term of ten years, so the maximum with consecutive sentences was twenty. Judge Steckler thought that an effective term of five years was one-fourth of the maximum; by the time Judge Dillin was done, Kimber-

lin points out, his term was one-half of the maximum.

This misses the point that a judge ordinarily selects a term that is appropriate in light of the general seriousness of the offense and the characteristics of the offender. The actual behavior constituting the offense (the receipt of two different explosives) is the same no matter how the terms could have been tacked consecutively if separate sentences had been permitted. Judge Steckler evidently thought five years the right time for this offense and offender, and Judge Dillin did not disagree. We have held before that a court may handle multiplicitous charges by merging the convictions at any time, as Judge Dillin did here. *United States v. Brown*, 688 F.2d 1112, 1121 (7th Cir.1982).

Kimberlin ended up exactly where he should be: with a single term of imprisonment under a single conviction. If Judge Dillin had believed that each explosive could support separate punishment, we might remand, as in *McFarland v. Pickett*, 469 F.2d 1277 (7th Cir.1972), so that the judge could determine whether the sentence was still appropriate in light of the fresh knowledge that Kimberlin's conduct was a single offense. But Judge Dillin, who merged the convictions, knew this. He was free to revise the sentence in light of his knowledge and chose not to. Because the recognition that the two original convictions were multiplicitous did not change the nature of the offense for which Kimberlin stood convicted, the district court acted within its discretion in merging the convictions without reducing the overall sentence.

In No. 83–3058 the judgment is vacated and the case is remanded with instructions to dismiss the motion under Rule 35(b) for want of jurisdiction. In No. 85–1282 the judgment is affirmed.

RIPPLE, Circuit Judge, dissenting.

This case involves two distinct sentencing matters. In the first, the appellant challenges the district court's November

1983 denial of his motion to reduce his sentence under Rule 35(b). In the second, the appellant challenges the district court's treatment of his January 1985 motion to correct an illegal sentence pursuant to Rule 35(a). Because I disagree with the majority's disposition of both of these matters, I respectfully dissent.

## I

The first of these claims—the motion for reduction in sentence under Rule 35(b)—is properly treated by the court as a close and complex question. The court's recent and, in my view, regrettable decision in *Gaertner v. United States*, 763 F.2d 787 (7th Cir.1985), makes it so. Interpreting the version of Rule 35(b) in force before August 1, 1985, *Gaertner* held that the district court was obliged to act on a motion to reduce a sentence within 120 days of the triggering event (receipt of the mandate of the court of appeals or final disposition by the Supreme Court of the United States). Failure to observe those time limits, the *Gaertner* court held, resulted in the district court's loss of jurisdiction.

Under usual circumstances, I would consider myself bound by the doctrine of *stare decisis* and follow the holding in *Gaertner* despite my disagreement with it. Overruling any precedent—especially such recent precedent—should be undertaken very rarely. However, effective August 1, 1985, the Supreme Court, with the full knowledge and consent of the Congress,[1] adopted an amendment to Rule 35(b) which was explicitly designed to disavow the position of this circuit.

In conforming the "language to the non-literal interpretation which most courts have already placed upon the rule," the Advisory Committee Notes disclose that "a change in the language is deemed desirable to remove any doubt which might arise from dictum in some cases...." The Advisory Committee then cites, as an example of this errant view, this court's decision in *United States v. Kajevic*, 711 F.2d 767 (7th Cir.1983), *cert. denied*, 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984) where, in *dicta*, the later holding of *Gaertner* was foreshadowed. In my view, the failure of the Congress to take affirmative action to amend or postpone the submission of the Supreme Court, despite its at least constructive knowledge of this court's decision in *Gaertner*, justifies and indeed compels our reassessment of that holding. The effective date of the interim rule has come and gone. The Congress has, at least passively, declined to alter the text, thus concurring in the correction of this circuit's position by the rules process. It is appropriate for us to reevaluate the situation.[2]

The most forthright—and respectful—way of remedying our error would be to overrule *Gaertner* and acknowledge that, in this area, we have an obligation to follow the mandate of the rule-making process. In my view, respect for the responsibilities of the Judicial Conference of the United

---

1. In 18 U.S.C. § 3772 (1976), the Congress gave the Supreme Court of the United States power to prescribe "rules of practice and procedure with respect to any or all proceedings after verdict...." Further, this section provides that the "Supreme Court may fix the dates when such rules shall take effect and the extent to which they shall apply to proceedings then pending...." However, as our court noted in *Gaertner*, 763 F.2d at 789 n. 2, Congress retains the ability to prevent these regulations from taking effect.

For a summary of the procedures used by the Advisory Committee, see Procedures for the Conduct of Business by the Judicial Conference Committees on Rules of Practice and Procedure, *reprinted in* Federal Criminal Code and Rules (West, rev. ed. 1985).

2. The *Gaertner* opinion, delivered in June 1985, did not raise the same direct confrontation with the rule-making process. The same considerations apply to the July 11, 1985 denial of the petition for rehearing *en banc*. At that time, the Rule 35(b) interim provision (valid from August 1, 1985 through November 1, 1986) had not yet taken effect. Therefore, since the Congress was still in session through July, it was possible for it to alter or delay the interim provision.

However, our case is born into a world entirely different than *Gaertner's*. The Rule 35(b) interim provision is now in effect; the time for amending or postponing it has long since passed. In essence, the Congress and the Supreme Court have conclusively decided—without any indication of waiver or retreat—that our circuit's *Gaertner* decision was wrong.

States, the Supreme Court, and the Congress requires that we so proceed. To maintain a circuit conflict which results in unequal treatment of those who have been subject to the criminal process is serious enough. To continue to maintain that position after the rule-making process—including the Congress—has found that our position is wrong is even more serious.

If the court is unwilling to overrule *Gaertner*, it should at least decline to apply it retroactively. The general rule is, as the majority points out, that jurisdictional holdings are to be applied retroactively. However, the Supreme Court has recognized, as the majority also notes, that such an approach is not always indicated. *See, e.g., Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) (refusing to apply retroactively *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), which limited the jurisdiction of courts martial). Indeed, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court declined to apply retroactively its holding significantly limiting the jurisdiction of the bankruptcy courts. Applying the criteria developed in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Court decided against retroactive application of its jurisdictional holding. 458 U.S. at 87–89, 102 S.Ct. at 2880–81.

The *Chevron* criteria also militate against the retroactive application of the *Gaertner* holding. Such a deviation was certainly not clearly foreshadowed by earlier caselaw; the district judge ought to be charged with following the holdings of our previous cases—not their *dicta.* The retroactive application of *Gaertner* frustrates the established policy of the rule-making process. Finally, the retroactive application of the *Gaertner* holding is bound to work substantial injustice on many criminal defendants in this circuit and place them in a less advantageous position than those in the other circuits. By acting now and rejoining the rest of the country on this matter, we would demonstrate proper respect for the rule-making process. We would

also ensure that justice is administered even-handedly.

Since I would hold that the district court had jurisdiction to act on the motion before it, I would reach the merits of the appeal. Here, I find no abuse of discretion on the part of the district judge and I would affirm his judgment.

II

While the disheveled state of this record makes it difficult to understand exactly what transpired in the district court, I am nonetheless troubled by the majority's disposition of the appellant's Rule 35(a) claim. As the district court and the majority note, it is quite proper to handle multiplicitous charges by merging the convictions. *United States v. Brown,* 688 F.2d 1112 (7th Cir.1982). However, this court has also held that, when the multiplicity is discovered after the initial sentencing, a resentencing is required since the judge may have been influenced by his erroneous belief that the defendant had committed two offenses rather than one. *McFarland v. Pickett,* 469 F.2d 1277, 1279 (7th Cir.1972). The same rule is applied when the sentences are concurrent rather than consecutive. *See United States v. Harris,* 729 F.2d 441, 449 (7th Cir.1984). I do not understand the majority to contest either of these propositions.

The appellant's contention turns on whether the district judge actually resentenced him. On this record, I am not prepared to hold that the action of the district judge amounted to a full and independent evaluation of the sentence. *See Paul v. United States,* 734 F.2d 1064 (5th Cir.1984); *United States v. Eddy,* 677 F.2d 656 (8th Cir.1982); *Johnson v. United States,* 619 F.2d 366 (5th Cir.1980); *United States v. Durbin,* 542 F.2d 486 (8th Cir.1976).

Accordingly, I would affirm the district court's denial of the Rule 35(b) motion. I would reverse the denial of the Rule 35(a) motion and remand for resentencing.