Alfred B. DIGGS, Appellant,

v.

**UNITED STATES of America, Appellee.**

No. 83–3143.

United States Court of Appeals,
Third Circuit.

Argued Jan. 23, 1984.

Decided July 26, 1984.

Peter T. Campana (argued), Campana & Campana, Williamsport, Pa., for appellant.

David Dart Queen, U.S. Atty., Bernard V. O'Hare (argued), Asst. U.S. Atty., Scranton, Pa., for appellee.

Before GIBBONS and BECKER, Circuit Judges, and ATKINS, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

Federal Rule of Criminal Procedure 35(b) gives a district court the power to reduce a sentence it previously imposed upon a crim-

---

* Honorable C. Clyde Atkins, United States District Judge for the Southern District of Florida, sitting by designation.

inal defendant; the rule also states, generally speaking, that this reduction must take place, if at all, within 120 days of a final decision upholding the conviction. In the case before us, which is an appeal from a district court denial of a motion for collateral relief under 28 U.S.C. § 2255, the district court, after waiting two and a half years, granted prisoner Alfred Diggs' rule 35(b) motion, and then reversed itself, vacating its order on grounds that it had lost jurisdiction by virtue of the passage of time. Diggs claims this last act was error and appeals.

There are three major issues before us. First, we must decide whether the errors asserted by Diggs are cognizable on section 2255 motions, that is, whether the alleged errors are of sufficient magnitude to warrant collateral relief under that section, *see Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), and whether the failure of Diggs to assert the errors on a direct appeal precludes the section 2255 collateral attack, *see United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). For the reasons explained below, we hold that the errors asserted by Diggs were of the requisite magnitude and that his failure to raise them on a prior appeal does not preclude his section 2255 action. *See United States v. Baylin*, 696 F.2d 1030 (3d Cir.1982).

Second, having found section 2255 to have been properly invoked, we must determine whether the district court indeed erred when it ruled that it had lost jurisdiction over Diggs' Rule 35(b) motion and was accordingly obligated to vacate its earlier decision granting that motion. Notwithstanding dictum in *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), which arguably suggests a contrary conclusion, we hold that the district court had a "reasonable time"

beyond the 120-day limit to decide Diggs' motion, *accord Virgin Islands v. Gereau*, 603 F.2d 438, 442 n. 2 (3d Cir.1979), but that two and a half years was more than a reasonable time.

Third, we must decide whether Rule 35(b), so interpreted, is unconstitutional in that it potentially deprives prisoners of a putative right to have their petition for a reduction of sentence considered by the district court. While we acknowledge the issue to be provoking, particularly in light of the Supreme Court's recent decision in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), we find that no constitutional problem arises here. Accordingly, we affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On December 27, 1978, Alfred B. Diggs was sentenced by the United States District Court for the Middle District of Pennsylvania to a ten-year prison term following his conviction by a jury for armed bank robbery under 18 U.S.C. § 2113(a) & (d) (1976). He appealed that conviction, and this Court affirmed.[1] This court's mandate was received in the district court on October 11, 1979. Seventy-six days later, on December 26, 1979, Diggs filed, *pro se*, a timely letter-motion requesting reduction of sentence pursuant to Fed.R.Crim.P. 35(b). At that time Diggs had been incarcerated for one year.[2] Diggs' letter-motion, however, was not served on the government; nor was it docketed with the clerk until July 22, 1982—approximately two and one-half years later. Its whereabouts prior to that date are unknown. On July 22, 1982, the district court, without a hearing and without notice to the government, granted Diggs' motion, amending his

---

1. *United States v. Diggs*, 605 F.2d 1197 (3d Cir. 1979) (Judgment Order).

2. Diggs' letter-motion for reduction of sentence, addressed to the district court judge, focused upon (1) psychological and theological courses Diggs had taken in prison; (2) vocational training programs he attended there; (3) his institutional conduct, which he claimed was "good, if not perfect;" and (4) his attitude; i.e., he stated that he realized his mistakes and responsibilities to his family, and believed that sentence reduction would "strengthen family ties and relieve anxieties at a time when they are most urgently needed."

sentence to "time served as of July 31, 1982." This order reduced Diggs' sentence to a three and one-half year prison term, one-third of that originally imposed, and would have resulted in his prompt release from prison.

The United States first received notice that Diggs had filed a rule 35(b) motion when it received the order reducing Diggs' sentence. The government promptly moved to stay and vacate that order. On July 26, the district court granted a stay, and on September 20, 1982, after briefing (defendant's brief was submitted by his trial counsel), the court vacated its July 22, 1982, order and reinstated Diggs original sentence.[3] In vacating the order, the court reasoned:

> The court reluctantly concludes that the passage of time between the filing of the Rule 35 motion on December 26, 1979 and the Order of July 22, 1982, reducing the sentence to time served as of July 31, 1982, renders the action taken inappropriate under the circumstances. The court continues to believe, after consultation with the Chief Probation Officer, that petitioner's belated admission of his involvement in the offense, his change of attitude, his potential for rehabilitation, and his family situation militate favorably for an early release. However, this is now a matter for the Parole Commission to evaluate ....

The record discloses that Diggs and his attorney were sent a copy of the order vacating the sentence reduction. Neither Diggs nor his attorney filed a notice of appeal.

On February 4, 1983, once again proceeding *pro se*, Diggs filed what he styled as a motion for rehearing, and a petition for a writ of habeas corpus in which he ques-

tioned the propriety of the September 20, 1982 order. The court denied appellant's motion for rehearing on February 18, 1983, but stated it would entertain the habeas corpus petition. Treating the petition as a motion pursuant to 28 U.S.C. § 2255 (1982), the court dismissed it on March 7, 1983. Diggs then filed, *pro se*, a timely notice of appeal, and we appointed counsel to represent him.

## II. *THE AVAILABILITY OF SECTION 2255 RELIEF*

The government contends that Diggs' section 2255 application is nothing more than a disguised Rule 35(b) motion that raises the same legal issues raised previously. It argues that the ends of justice would not be served by permitting reconsideration of this same issue by successive application. In conjunction with this argument, the government points out that Diggs could also have raised his due process claim by appeal from the September 20, 1982 order, and it suggests that his failure to do so should bar consideration of a § 2255 motion filed four and one-half months later.

### A. *Magnitude of Claimed Error*

Under *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979), and *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), it is clear that not all non-constitutional errors in criminal proceedings enable a prisoner to bring an action under 28 U.S.C. § 2255 for relief; that statutory provision does not provide a substitute for appeal. Rather, an error of law does not provide a basis for collateral attack unless the claimed error constituted

---

**3.** The government contended in its brief that the court was without jurisdiction under Rule 35(b) to grant the motion for reduction of sentence. Appellant, in a brief submitted by his trial counsel, noted the issue was one of first impression in the United States District Court for the Middle District of Pennsylvania. He urged the court to take the equitable position

> provided the court has determined in its own mind and is satisfied that the delay in grant-

ing defendant's motion was not a misuse of the court's power as a substitute for the consideration of parole by the Parole Board, but because of preoccupation, inadvertence [sic] or such other causes as would not conflict with the courts' proper use of its power to reduce sentences.

Petitioner/Defendant's Memorandum in Opposition to Motion to Vacate Order, p. 4.

"a fundamental defect which inherently results in a complete miscarriage of justice." *Addonizio,* 442 U.S. at 185, 99 S.Ct. at 2240 (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. at 471). The first issue before us, therefore, is whether the district court's allegedly erroneous ruling concerning its jurisdiction over Diggs' rule 35(b) motion is cognizable under section 2255.

■ We believe that, if the district court indeed erred in ultimately concluding that it lacked jurisdiction over the Rule 35(b) motion, a complete miscarriage of justice would result. The error would not be one that would be washed out by the course of subsequent trial proceedings. Rather, it would wrongly subject an individual whom the trial court, exercising arguably lawful authority, released from any form of custody, to six and a half years of imprisonment or parole. This is precisely the type of error for which Congress created section 2255.[4]

### B. *Procedural Default*

■ As we have noted, Diggs did not appeal the district court's vacatur of its earlier order granting his rule 35(b) motion. Although we have found no case law precisely on point, we have no doubt that, because Diggs could have appealed an original denial of his rule 35(b) motion for reduction of sentence, *see United States v. Dansker,* 581 F.2d 69 (3d Cir.1978), he could have appealed the vacatur. Hence, Diggs committed a "procedural default." The question before us, therefore, is whether this procedural default bars Diggs from collateral relief.

*United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), stands as a barrier to section 2255 movants asserting errors that could have been raised at trial or on appeal. In that case the Supreme Court extended the rule of *Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which applies to motions by state prisoners under 28 U.S.C. § 2254, to motions by federal prisoners under 28 U.S.C. § 2255. Accordingly, the Court there held that, at least as to errors committed at trial for which a rule of criminal procedure required contemporaneous objection, the failure to make such contemporaneous objection and the failure to assert "plain error" on appeal would bar the assignment of such error as grounds for section 2255 relief, unless cause for the "procedural default" could be shown and unless "actual prejudice" to the defendant could be shown to have resulted.

As we read it, *Frady* rested its use of a "cause and prejudice" standard on two factors. First, of course, was the public interest in the finality of criminal convictions. While in one sense the very existence of section 2255 suggested this interest in finality not to be absolute, that statute was not to be used to eviscerate the "orderly procedures" established by Congress and the courts for the conduct of criminal adjudications. A second factor relied upon by the *Frady* court was the existence of two rules of criminal procedure. The first, rule 30, requires contemporaneous objection to erroneous jury charges. The second, rule 52(b), "temper[s] the severity of rule 30" by permitting appellate courts to overturn criminal convictions on grounds of "plain error." It would certainly undercut rule 30 to allow simple error to be raised on a section 2255 motion.[5]

The applicability of the *Frady* "cause and prejudice" standard to procedural defaults occurring outside the paradigmatic instances of failures to object contempora-

---

**4.** There can be little doubt that Diggs' constitutional claim is cognizable under section 2255 provided, of course, that it has not been waived by Diggs' failure to raise it in a direct appeal from the district court order vacating its earlier grant of his Rule 35(b) motion.

**5.** Although the *Frady* court did not rely on this point, it might also be argued that it would undercut Rule 4 of the Federal Rules of Appellate Procedure, which governs the time for taking an appeal, if mere "plain error" could be raised at any time on a section 2255 motion. On the other hand, it is hard to imagine those convicted of crime (and perhaps incarcerated in prison) neglecting to bring a timely appeal in order to raise "plain error" on a later section 2255 motion.

neously to evidentiary rulings or rulings on jury charges has been a subject of dispute in the courts. Judge Posner, writing for a panel of the Seventh Circuit, has taken perhaps the broadest view of *Frady* to date. In an opinion relying (albeit with caution) on the "general language" of *Frady*, the Seventh Circuit held that the failure of a prisoner to take an appeal of a constitutional claim that was fully pressed at trial bars relitigation of that claim on a section 2255 motion, absent a showing of cause and prejudice. *See Norris v. United States*, 687 F.2d 899 (7th Cir.1982). The Second Circuit, by contrast, has interpreted *Frady* more narrowly, reading it as based on the presence in that case of a specific rule of criminal procedure requiring contemporaneous objection. *See United States v. Corsentino*, 685 F.2d 48, 50–51 (2d Cir.1982). Thus, in a case involving a section 2255 challenge to a sentence alleged to have been imposed unlawfully after a plea of guilty, the Second Circuit held that the prisoner's failure to appeal an earlier denial of his rule 35(b) motion based on the same issue did not bar section 2255 relief.

Our own circuit has also considered the applicability of *Frady* to post-trial errors where no rule of criminal procedure requires contemporaneous objection. In *United States v. Baylin*, 696 F.2d 1030 (3d Cir.1982), we ruled that the failure of a criminal defendant to object to the inclusion of certain material in a pre-sentence investigation report did not bar a challenge on a section 2255 motion to the inclusion of that material. Citing the Second Circuit's decision in *Corsentino*, but without the benefit of Judge Posner's forceful opinion

to the contrary, the *Baylin* panel reasoned that, because section 2255 was the equivalent of a direct appeal on sentencing matters and because the procedural rules concerning sentencing matters are not as well defined as the rules concerning trial procedure, *Frady* did not apply.[6]

Our decision in *Baylin* concerning the scope of the "cause and prejudice" standard as to section 2255 motions has been echoed in our treatment of section 2254 motions, which accord state prisoners the right to a federal forum in order to assert their federal constitutional claims. In *Beaty v. Patton*, 700 F.2d 110, 112–13 (3d Cir.1983) (per curiam), we held that *Wainwright v. Sykes* did not overrule *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), on its facts and that therefore the "deliberate bypass" standard of *Fay* rather than the "cause and prejudice" standard of *Wainwright* governed the procedural default of failing to appeal.[7]

■ With this background in mind, we now evaluate whether the cause and prejudice standard should apply to Diggs' procedural default. We conclude that it should not. To begin with, we do not see how this case can be meaningfully distinguished from *Baylin*. Here too the error asserted was in sentencing and post-sentencing proceedings, where we have said the rules of criminal procedure are not as well marked. Moreover, it would appear that application of the "cause" prong of the cause and prejudice test has little meaning in the context of post-trial proceedings involving indigent litigants because they normally will be without the assistance of those schooled in the technicalities of our appellate proce-

**6.** As we have discussed, decisions under rule 35 are generally subject to appeal; hence, arguably our statements that the section 2255 motion amounted to Baylin's first appeal may have too swiftly jumped over the question of whether Baylin committed a procedural default subject to the cause and prejudice standard of *Frady* when he failed to take an appeal from the decision concerning inclusion of the allegedly improper material in the pre-sentence report. Also, our comments concerning the relative vagueness of the rules at the sentencing stage of criminal proceedings might be argued to relate

more to the existence of cause for a procedural default than to the applicability vel non of the cause and prejudice standard.

**7.** *See The Supreme Court—1981 Term*, 96 Harv. L.Rev. 224 n. 58 (1982) ("Unless explicitly overruled, *Fay* and the "deliberate by-pass" standard will presumably be limited to such decisions as the choice whether to pursue an appeal, decisions typically made by the defendant as well as his counsel").

dures.[8] Finally, there would not appear to be any basis for distinguishing the procedural consequences of failing to appeal between petitions under sections 2254 and 2255. *Cf. Frady,* 456 U.S. at 166–68 & n. 15, 102 S.Ct. at 1593–94 & n. 15; *Beaty,* 700 F.2d at 112–13. Having ruled that Diggs' claims were properly before the district court on a motion under section 2255, we now turn to the merits of his claims.

### III. THE DISTRICT COURT'S JURISDICTION OVER THE RULE 35(b) MOTION

We begin our discussion with an examination of recent Rule 35(b) jurisprudence. We first discuss whether *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), overruled prior holdings of this court that a district court may decide a rule 35(b) motion for a "reasonable time" after the 120-day limit prescribed by that rule. We hold that *Addonizio* did not overrule these cases. Accordingly, we then consider whether two and one-half years is a "reasonable time" within the meaning of our precedents. We conclude that it is not, no matter what the reason for the delay.

### A.

In *United States v. Addonizio,* the Supreme Court stated, "Federal Rule Crim. Proc. 35 now authorizes district courts to reduce a sentence within 120 days after it is imposed or after it has been affirmed on appeal. The time period is jurisdictional and may not be extended." 442 U.S. at 189, 99 S.Ct. at 2242. If the Supreme Court truly held that the 120-day period was a "jurisdictional" limit on the power of the district court to decide rule 35(b) motions, our prior cases granting the district court a "reasonable time" after the 120 days to decide rule 35 motions would be overruled. *See United States v. Janiec,* 505 F.2d 983, 984–85 n. 3 (3d Cir.1974) (sentencing court has authority to reduce a sentence beyond the 120-day period where the rule 35(b) motion has been filed within such period), *cert. denied,* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975).

We believe that because it is dictum, the cited statement of the Supreme Court in *Addonizio* did not overrule Third Circuit precedent granting the district court a "reasonable time" past the 120 days.[9] The Fifth Circuit in *United States v. Krohn,* 700 F.2d 1033, 1035–38 (5th Cir.1983), has carefully analyzed the Supreme Court's decision in *Addonizio.* The court noted that the jurisdictional nature of the 120-day limit of Rule 35(b) was not at issue in that case, that the Supreme Court has repeatedly cautioned that it "does not decide important questions of law by cursory dicta inserted in unrelated cases," *see In re Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), and that manifest unfairness would result from such a strict reading of the rule.[10] We

---

**8.** Even if the "cause and prejudice" standard of *Frady* were to apply, we suspect Diggs would surmount it. His lack of representation arguably excuses his procedural default. And he has surely been prejudiced by it. Unlike the trial situation, where evidentiary rulings or fine points of jury charges may ultimately have little to do with the jury's adjudication of guilt or innocence, errors made in sentencing will almost always affect the duration of the prisoner's deprivation of liberty.

**9.** We may have already so declared in *Virgin Islands v. Gereau,* 603 F.2d 438, 442 n. 2 (3d Cir.1979). We said: "Rule 35 speaks in terms of the court's action being taken within 120 days, but it is well established that, once a timely motion is filed, the district court may retain jurisdiction for a reasonable amount of time to

decide the motion. *See United States v. Mendoza,* 581 F.2d 89 (5th Cir.1978) (per curiam; in banc); *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975)." If we view the statements in *Gereau* as a square holding, we are of course bound to adhere to it by virtue of our Internal Operating Procedure, Chapter VIIC. Fortunately, however, we need not decide the precedential authority of the assertion in *Gereau,* which, though issued after *Addonizio,* did not mention the case, for we believe that the result reached by *Gereau* is correct.

**10.** It is clear that the Court in *Addonizio* was not addressing the question whether a district court lost jurisdiction over a rule 35(b) motion filed within the 120-day period because the court had not ruled on the motion when the clock ran out.

agree with the Fifth Circuit's analysis in its entirety and thus hold that the dictum in *Addonizio* did not overrule our prior holdings on the subject.[11]

### B.

Given our conclusion that *Addonizio* did not overrule our prior holding that the district court has a "reasonable time" beyond the 120 days provided for by rule 35(b), we must decide whether the two and a half year delay involved in this case was reasonable. This determination requires us to examine the purposes of rule 35(b) and its 120-day time limit.

As we have suggested on a prior occasion, *see United States v. Ferri*, 686 F.2d 147, 154–55 (3d Cir.1982), and as other circuit courts have likewise intimated, *see United States v. Kajevic*, 711 F.2d 767, 771 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984); *United States v. Krohn*, 700 F.2d 1033, 1037 (5th Cir.1983); *United States v. Pollack*, 655 F.2d 243, 246 (D.C.Cir.1980); *United States v. Stollings*, 516 F.2d 1287, 1289 (4th Cir.1975), the 120-day time limit of rule 35(b) is simply another manifestation of a central fact underlying modern federal criminal procedure: the power to determine the length and conditions of an individual criminal's punishment is dispersed between the judicial and executive branches. Under contemporary jurisprudence, the 120-day

time limit serves chiefly to ensure that the power to reconsider sentencing decisions sensibly conferred on the district courts by Congress and the Supreme Court via rule 35(b) does not become a tool for overruling the Parole Commission after that body, in consonance with the Parole Commission and Reorganization Act, determines the likely release date of the criminal.[12]

■ In this case, the district court's vacatur of its earlier decision granting Diggs' rule 35(b) motion showed proper respect for the "separation of power" concerns underlying the 120-day time limit. Diggs had, by the time of action on the motion, served one-third of his ten-year sentence, and been the subject of Parole Commission action. The district court acknowledged that Diggs' continued incarceration, in light of possible reform, "is now a matter for the Parole Commission to evaluate." The district court also acknowledged that, in previously granting the rule 35(b) motion, it had consulted with the Chief Probation Officer and had continued to believe that Diggs' "belated admission of his involvement in the offense, his change of attitude, his potential for rehabilitation, and his family situation militate favorably for an early release." All of the above suggests that the district court was in a position to—and did—second-guess the Parole Commission when it initially granted Diggs' motion under rule 35(b).[13] The "reasonable time"

11. The Eighth Circuit has reached the same result in *United States v. DeMier*, 671 F.2d 1200, 1205–06 (8th Cir.1982). The Ninth Circuit, in *United States v. Smith*, 650 F.2d 206, 209 (9th Cir.1981) has declined—albeit without discussing the *Addonizio* dictum—to retreat from its holding that the district court may retain jurisdiction beyond the rule 35(b) period. A contrary viewpoint, however, has been expressed by the Seventh Circuit in *United States v. Kajevic*, 711 F.2d 767 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984), which concluded that the passage from *Addonizio* is an integral part of the approach in that case. Ultimately, however, the *Kajevic* court decided its case on the basis that, under the circumstances, the district court's delay was unreasonable. Technically, therefore, there is not yet a circuit split on the issue presented here.

12. Rule 35(b), it may be observed, is a flawed vehicle for assuring this separation between the

spheres of the courts and the Parole Commission. The Parole Commission generally issues its presumptive parole date within several months of the time that the prisoner is incarcerated, yet the 120-day limit of Rule 35(b) also may start to run after the court of appeals and/or the Supreme Court dispose of any appeals or certiorari petitions concerning the underlying conviction—a process that can take more than a year. A district judge is thus put by the Rule itself in position to second-guess Parole Commission harshness by reducing sentence below the presumptive parole date. Perhaps the Advisory Committee on Criminal Rules may wish to consider this problem.

13. The dissenting opinion of Judge Gibbons suggests that we should remand to determine whether the district court really did second-guess the Parole Commission or whether it predicated its initial grant of Diggs' Rule 35(b)

contemplated by *Janiec* and *Gereau* is a reasonable time to decide the issue presented by the rule 35 motion, not a license to wait and reevaluate the sentencing decision in the light of subsequent developments. We do not believe the Federal Rules of Criminal Procedure countenance the sort of violation of the 120-day limit involved in this case. Consequently, we believe the district court was correct in vacating its earlier order granting Diggs' rule 35(b) motion.

## IV. CONSTITUTIONAL CLAIM

### A. Contentions

Finally, we are in a position to reach Diggs constitutional claim. The claim arises from the district court's failure to take any action on Diggs' rule 35(b) motion until it was too late. As stated by his court-appointed appellate attorney—and this is all he says on the matter—the claim is that "[i]f he [Diggs] is not entitled to a reduction of sentence solely because of the delay, and he had no control over the delay, it is submitted that a due process violation is established." As we read it, Diggs' is attacking the constitutionality of rule 35 as applied.

There are two possible views of the "liberty" or "property" interest of which Diggs has ostensibly been deprived without due process. It could be argued, for example, that rule 35(b)'s jurisdictional limit has, in this case, deprived Diggs of liberty in the traditional sense. When the district court ignored the jurisdictional limit and initially granted Diggs' rule 35(b) motion, it freed him; when it applied rule 35(b) correctly, *see supra* part III, it caused him to be imprisoned.[14] Alternatively, or in addi-

tion, it could be argued that rule 35(b) itself created an entitlement: the right to reconsideration of sentencing decisions by the sentencing judge. The 120-day jurisdictional limit, this argument continues, arbitrarily deprived Diggs of this right without any hearing whatsoever. We now examine each of these arguments.

### B. The Deprivation of Traditional Liberty

If Diggs' argument is that he has been deprived of liberty in the traditional sense by the application of rule 35(b)'s jurisdictional limits in this case, we have little problem in rejecting the constitutional attack on rule 35(b). We do not believe the reconsideration provisions of the Federal Rules can be considered in isolation; rather, they must be seen as part of a system for determining—at least initially—the prisoner's period of incarceration. We cannot say that a system that effectively makes reconsideration of sentencing decisions discretionary amounts to a deprivation of liberty without due process of law. The convicted defendant has a hearing with extensive procedural safeguards after which sentencing is determined. We think the procedural safeguards provided for in the initial sentencing determination generally suffice for constitutional due process purposes.

### C. The Rule 35(b) Entitlement

Analysis of the second theory under which a due process violation might be made out requires consideration of the Supreme Court's recent decision in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102

---

motion on events taking place before the 120-day limit expired. The suggestion is not without force. If, taking all circumstances into account, we found the record ambiguous, or perhaps if the 120-day limit had not been so grossly exceeded, we might be persuaded of Judge Gibbons' position despite the possible problems that might result from requiring the district judge effectively to testify as to his prior reasoning and behavior. For us, however, the record is clear enough.

14. We were advised by appellant's attorney at oral argument that the Parole Commission—perhaps following the district court's suggestion—released Diggs under parole supervision, some time subsequent to the filing of his notice of appeal. The fact that the Parole Commission subsequently released Diggs subject to parole is of no consequence to this analysis and does not moot Diggs' claim. *See Mabry v. Johnson,* —— U.S. ——, —— n. 3, 104 S.Ct. 2543, 2546 n. 3, 81 L.Ed.2d 437 (1984).

S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Zimmerman Brush*, the Supreme Court ruled that the failure of the Illinois Fair Employment Practices Commission to schedule a hearing on a discrimination claim within 120 days of filing violated the due process rights of an individual who had timely filed a claim of discrimination where (1) the state had created a statutory right to sue for discrimination, and (2) the state courts had definitively construed the set of statutes creating that right as foreclosing individual claims where the Fair Employment Practices Commission failed to hold a hearing on it within 120 days. The Court reasoned (1) that a cause of action created by statute was property protected by the due process clause, 455 U.S. 428–31, 102 S.Ct. 1153–55, (2) that the "procedures" whereby an individual could be deprived of such property were a matter of federal constitutional law and could not be definitively defined by the state itself, *id.* at 431–33, 102 S.Ct. at 1155–56;[15] (3) that "a system or procedure that deprives persons of their claims in a random manner ... presents an unjustifiably high risk that meritorious claims will be terminated," *id.* at 434–35, 102 S.Ct. at 1156–57; and (4) that the state had no "appreciable interest" in preserving the process its statutes had created, *id.*[16] Four Justices additionally found that the same factors caused the statute to violate the fourteenth amendment's equal protection clause.

Given the analysis in *Zimmerman Brush*, Diggs could argue that rule 35(b) creates a "property" or "liberty" interest that could not be extinguished without due process of law, and that, just as Illinois did not confer the process due when it enabled property claims to be destroyed without any hearing whatsoever, so here the federal government has destroyed "property" or "liberty" by placing the 120-day (plus reasonable time) jurisdictional limit on the district judge, which in this case has operated to Diggs' detriment.

We have a number of difficulties with the notion that Rule 35(b) itself creates a "property" or "liberty" entitlement subject to due process strictures. To begin with, while we can accommodate ourselves to the concept that a substantive entitlement created by a law-making body can differ from the procedures established by the law-making bodies for its vindication, *see supra* note 15, we have considerable problems in understanding how a rule, the validity of which depends on its "procedural nature,"[17] and which is the product of both judicial and legislative action,[18] can create a "substantive entitlement" at all. We have even more difficulty seeing how it could create a substantive entitlement that is broader than the "procedures" set out for its vindication and that must be protected not by the "procedures" set out by the judiciary when promulgating the rule but

---

**15.** The Court thus reaffirmed its rejection of the "positivist" (or "bitter with the sweet," *see Arnett v. Kennedy*, 416 U.S. 134, 154, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974) (plurality opinion)) approach under which, at least for entitlements not existing at common law, the procedures vindicating the entitlement define the entitlement itself and under which only the failure to follow those procedures will give rise to a "due process" violation—one which is coincident with the violation of the statutory scheme creating the entitlement.

**16.** The fact that a statute fully authorizes the deprivation in *Logan*, rather than the random and unauthorized act of a state employee, fully distinguished the case from *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in which the Supreme Court held that a prison guard's negligent loss of a prisoner's hobby kit did not create a fourteenth amendment

violation where the loss could not be attributed to any state statute—the legislature can do only so much to limit carelessness—and where the state provided a remedy in the event of such negligent deprivations.

**17.** *See* 18 U.S.C. § 3771 (1982) (rules enabling act for rules of criminal procedure, which authorizes rules of procedure, not substantive law).

**18.** *See* 18 U.S.C. § 3771 (1982) (rules promulgated by Supreme Court subject to Congressional disapproval); *cf. Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965) (rules presumptively constitutional). *But cf. Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946) (rules subject to challenge for going beyond enabling legislation).

by the judiciary in adjudicating individual cases. Moreover, even if a corpus of "procedural rules" could theoretically create a substantive entitlement subject to due process protections, unlike *Zimmerman Brush*, the provision under constitutional scrutiny here is not a major part of the body of rules defining the entitlement sensed by the citizen. To say that rule 35, rather than the Rules of Criminal Procedure generally, creates the "property" or "liberty" entitlement is a concept that must give us pause.

■ Because inquiries in this area tend to descend into a Serbonian bog of abstruse metaphysics, we shall assume arguendo that rule 35 indeed creates an interest deserving of constitutional due process protections and shall now analyze whether the 120-day jurisdictional limit can be seen as "the process due." Although the issue is a close one, we believe that the jurisdictional limit is compatible with due process in this situation. Specifically, we believe the rule 35(b) jurisdictional limit creates considerably less risk of an erroneous deprivation, a factor which is critical in any attempt to assay the process due, *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), and that because, under the federal system of dispersed sentencing authority, the deprivation occasioned is minimal, *id.*

■ The concept of "error" has little meaning when applied to motions for relief under rule 35(b). Such motions are addressed entirely to the discretion of the district judge; the judge can deny such motions for virtually any reason or for no reason at all. *See United States v. Feliciano-Grafals*, 309 F.Supp. 1292 (D.P.R. 1970); *United States v. Ursini*, 296 F.Supp. 1152 (D.Conn.1968). Thus, it is difficult to understand how a "mistake" can be made as a result of the judge's failure to decide within 120 days (plus a

reasonable time), or as a result of rule 35(b)'s divesting of jurisdiction. Nonetheless, we concede for purposes of argument that a "mistake" may conceivably be made in situations (such as this) where a district judge would have reduced the sentence if he had jurisdiction, but cannot, because rule 35(b) has deprived him of jurisdiction.

More important than the fact that error from the jurisdictional limit of rule 35(b) is unlikely to occur, however, is the limited nature of the deprivation occasioned. In *Zimmerman Brush*, the failure of the Fair Employment Practices Commission to convene a hearing within the 120-day limit irrevocably terminated Mr. Logan's ability to vindicate his claim of discrimination under state law. The concerns expressed by the legislature in passing its anti-discrimination statute and by allowing private individuals to seek enforcement had been thwarted. Here, by contrast, the failure of the judge to act within the jurisdictional time limit does not preclude the prisoner from gaining earlier release based on the considerations of particularized hardship, repentance, and aberrant initial sentencing that fill the typical rule 35(b) motion. The Parole Commission is entitled to take these same factors into consideration in making its own determination as to the length of a criminal's incarceration.[19]

Finally, we would note that *Zimmerman Brush* is distinguishable from this case in that Illinois had no rational basis for foreclosing the claims of discriminations victims where the Commission failed to hold a hearing within 120 days. By contrast, Congress could rationally have decided that decisions concerning continued incarceration of a criminal were best put in the hands of Parole Commission "experts," *see Geraghty v. United States Parole Commission*, 719 F.2d 1199 (3d Cir.1983), and that a limit on the jurisdiction of the dis-

---

**19.** Whether the Parole Commission in fact takes all these considerations into account or whether it simply proceeds mechanically and rigidly in the application of its guidelines is an issue currently being explored by the Middle District of Pennsylvania as a result of our remand in *United States ex rel. Forman v. McCall*, 709 F.2d 852 (3d Cir.1983). At all events, we decline to address what impact a finding of rigidity sufficient to create ex post facto clause problems would have on subsequent due process challenges to the jurisdictional limit of Rule 35(b).

trict court over reconsideration decisions was necessary to accomplish this desired dispersal of sentencing authority. Indeed, we think it might well be inconsistent with our recent holding in *Geraghty* to say that Congress could constitutionally vest the Parole Commission with the power to determine the length of incarceration (and thus to divest the judiciary of that responsibility), but to say that this scheme could not constitutionally be implemented by limiting the jurisdiction of the district courts over motions under rule 35(b). Thus, unlike *Zimmerman Brush*, there is a countervailing state interest opposing the deprivation of "property" or "liberty" that the jurisdictional limit of rule 35(b) may sometimes occasion.[20]

The judgment of the district court will be affirmed.

GIBBONS, Circuit Judge, dissenting:

I concur in Parts I, II, and IIIA of the majority opinion. However, I dissent from that part of the opinion that is of most interest to the appellant: the affirmance of the district court's decision to vacate its belated reduction of sentence ruling.

I agree that one of the accepted reasons for the time limit in Rule 35 is the supposed fact that " 'after a lapse of time the peculiar ability of the court to determine sentence gives way to the presumably greater competence, and knowledge, of the penal authorities.' " *United States v. Ferri*, 686 F.2d 147, 155 (3d Cir.1982) (*quoting United States v. Dansker*, 581 F.2d 69, 73 (3d

Cir.1978) and 8A J. Moore, Moore's Federal Practice ¶ 35.02, at 35–4 n. 4 (2d ed. 1968)), *cert. denied sub nom. Matthews v. United States*, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983).[1] But the majority's application of this principle is not logical. Diggs' Rule 35 motion was filed timely in December of 1979. Because of an unfortunate error of the district court, however, the court did not take action on the motion until July of 1982, two and one-half years later. A delay caused by administrative error of the court itself cannot constitute "unreasonable delay" for the purpose of Rule 35. Were it otherwise, the defendant would be twice penalized: once because the court failed to act on his motion for two and one-half years; and once again because the court's own inaction bars Rule 35 relief. Consequently, when the district court, as here, fails to act on a defendant's timely Rule 35 motion by reason of the court's own error, any ensuing delay cannot as a matter of law be "unreasonable delay" barring Rule 35 relief.

The majority is surely correct, however, that any Rule 35 relief could not be based on facts and events that arose after the 120-day period. Therefore, the appropriate disposition is to remand with instructions to entertain Diggs' Rule 35 motion to the extent that it is based on facts and events that arose before the expiration of the 120-day period of Rule 35. This simple disposition would avoid any "second-guessing" of the Parole Commission beyond that for which Rule 35 itself inherently provides.

---

**20.** Although Diggs does not explicitly make a fifth amendment equal protection argument against Rule 35(b), it would fail for precisely the same reason that the due process argument fails: there is a rational basis for the "random deprivation" that the 120-day (plus reasonable time) jurisdictional limit engenders. *Cf. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 438, 102 S.Ct. 1148, 1159, 71 L.Ed.2d 265 (1982) (Blackmun, J., concurring).

**1.** Interestingly enough, this interpretation of Rule 35 is unsupported by the Advisory Committee Notes to the Rule and its various amendments. Its only derivation appears to be a federal common law interpretation of Rule 35 and the surmise of Professor Moore. In addition,

the interpretation is not easily reconciled with this court's conclusion that " ' "Rule 35 … affords the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim." ' " *Ferri*, 686 F.2d at 154 (quoting *United States v. Johnson*, 634 F.2d 94, 96 (3d Cir.1980) and *United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968)). An appropriate reconciliation of these analyses would provide that a court which delays its response to a timely Rule 35(b) motion can only consider post-incarceration conduct by the prisoner that extends to the 120th day of confinement.

Rather than adopt this simple and appropriate disposition, however, the majority speculates that the district court "second-guess[ed]" the Parole Commission when it initially granted Diggs' Rule 35 motion, and affirms the court's vacatur of its July 22, 1982 order. There is no point to speculating in this fashion. The district court is obviously in a better position than this court to determine whether it predicated its July 22, 1982 order on events arising after the 120-day period of Rule 35. The appropriate action is to remand to the district court with instructions to make the proper determination. By refusing to do so, this court deprives Diggs of an opportunity for a hearing before the district court on any legitimate basis for relief under Rule 35— *i.e.*, grounds arising before or during the 120-day period—because of the district court's own error. Whether or not this sorry result is a violation of due process, it certainly is not required by Rule 35.

Thus, the only appropriate action for this court to take would be to reverse the order of March 7, 1983 denying habeas relief and the order of September 20, 1983 vacating the grant of Rule 35 relief, and remand to the district court for proceedings consistent with the principle of law announced in this opinion: a court which delays its disposition to a timely Rule 35(b) motion beyond the 120-day limit may grant relief if its decision is based on facts and events that did not arise after the 120-day period. This construction of Rule 35 makes unnecessary any consideration of Diggs' due process claim.[2]

This ought to be the least that we should do for Mr. Diggs. After all, his timely motion for a reduction in his sentence slipped through some crack in the bureaucratic system and languished for two and one-half years. I see no reason why we should go out of our way to interpret the lower court proceedings in such a way as to forever deprive him of his right to have the district court rethink its original sentence. Our system already dismisses too many appeals by indigent and uncounseled citizens because of procedural errors in the presentation of their cases. It is saddening to see the same story when the procedural error is made by the court and not by the prisoner.

I respectfully dissent.

---

**2.** I therefore do not join in Part IV of the majority opinion, which reaches out to decide the due process issue unnecessarily. Rule 35 permits the district court's consideration of grounds for relief arising before or during the 120-day period in this case. There is therefore no need to decide whether a contrary construction would violate due process when the fault of two and one-half years of inaction is the court's and not the defendant's. I do not understand Diggs to argue that the failure to consider grounds arising *after* the 120-day period violates due process.