**Michael GARCIA, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 85–784.

District of Columbia Court of Appeals.

Argued Dec. 17, 1987.
Decided May 23, 1988.

Brian Paul Jenny, Washington, D.C., for appellant.

Patricia A. Riley, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the briefs were filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN and ROGERS, Associate Judges.

FERREN, Associate Judge:

Michael Garcia appeals the denial of his April 3, 1985 motion for reduction of sentence for lack of jurisdiction. We affirm that ruling. Treating this appeal, in part, as a petition for writ of mandamus, however, we remand for the trial court (1) to treat two unanswered letters Garcia wrote to the sentencing judge in June and July of 1984, within 120 days of his probation revocation, as timely filed motions to reduce sentence, and (2) to determine whether Garcia, under the circumstances, is entitled to relief.

## I.

Garcia pleaded guilty to assault with a dangerous weapon, D.C. Code § 22–502 (1981), and carrying a pistol without a license. Id. § 22–3204. On May 4, 1983, Judge Murphy sentenced him, consecutively, to 180 days in prison on the weapons charge and to a suspended term of 3 to 9 years of imprisonment on the assault charge. Judge Murphy then placed Garcia on probation for three years.

Less than a year later, Garcia was charged with second degree murder while armed and carrying a pistol without a license. He pleaded guilty to both charges before Judge Ryan. At a Peters II[1] hearing on April 27, 1984, before Judge Murphy, Garcia did not contest revocation of his probation. But Garcia, through counsel, did move for reduction of his 3 to 9 year sentence for the assault conviction, citing as reasons his guilty pleas, his poor upbringing, and the substantial sentences Judge Ryan was likely to impose for the murder and weapons charges. Judge Murphy denied the motion and revoked probation forthwith.

A month later, on May 29, Judge Ryan sentenced Garcia to prison terms of 7 to 21 years for second degree murder and one year for the weapons charge. The latter sentence was suspended in favor of three years on probation. From then on, Garcia embarked on a series of efforts to have Judges Murphy and Ryan reduce his consecutive prison sentences of 3 to 9 years and 7 to 21 years, respectively.

On June 7, 1984, Judge Murphy received a letter from Garcia requesting that he be allowed to serve his sentences for assault and murder concurrently. On June 20, a clerk in Judge Murphy's chambers responded by saying the judge did "not have jurisdiction over both of your sentences." Also on June 20, Garcia wrote to Judge Ryan requesting a "time cut" or at least, as he had sought from Judge Murphy, concurrent sentences for the murder and the earlier assault. Judge Ryan treated this letter as a pro se motion to reduce sentence and denied it by order on July 13. On June 26 and July 7, 1984, Garcia resumed his approach to Judge Murphy, sending two more letters requesting reduction of his sentence. Judge Murphy never responded. On September 7, counsel for Garcia in the murder case filed a motion to reduce sentence with Judge Ryan, who denied the motion three weeks later.

More than six months passed before Garcia tried again to obtain a reduction from Judge Murphy. On April 3, 1985, he filed a pro se motion to reduce sentence pursuant to Rule 35. A week later, on April 10, Judge Murphy denied the motion for lack of jurisdiction because Garcia had filed it more than 120 days after revocation of probation. Super.Ct.Crim.R. 35(b) (1987); see United States v. Nunzio, 430 A.2d 1372 (D.C. 1981) (trial court lacks jurisdiction to grant timely filed motion under previous Rule 35 when time specified in rule for such decision had expired).[2]

Garcia appeals from Judge Murphy's denial of his April 3 motion, arguing that the delay in filing was excusable because he

---

1. *United States v. Peters,* 103 Daily Wash.L.Rptr. 2217 (D.C.Super.Ct. Dec. 31, 1975), *set forth as appendix to In re A.W.,* 353 A.2d 686, 688 (D.C. 1976) (Nebeker, J., concurring).

2. Super.Ct.Crim.R. 35(b) (1987) provides in relevant part:

*Reduction of sentence.* A motion to reduce a sentence may be made not later than 120 days after the sentence is imposed or probation is revoked.... The Court shall determine the motion within a reasonable time.

had reasonably relied for a long time, to his detriment, on the letter of June 20, 1984, from Judge Murphy's chambers erroneously suggesting that the judge lacked power to act. Garcia also argues that his three letters to Judge Murphy in June and July of 1984 should be deemed motions to reduce. Because these letters, he says, were filed within the 120 day limit, Judge Murphy erred in rejecting the first and ignoring the other two.

## II.

■ We turn, first, to Garcia's argument that the 120–day jurisdictional limitation should be excused. Garcia maintains that the June 20 letter gave the impression that further efforts to obtain relief from Judge Murphy would be futile; consequently, he says, in reasonable reliance on that letter, he "terminated his efforts" until an inmate advised him that a formal motion would be proper. *See Government of the Virgin Islands v. Gereau,* 603 F.2d 438, 442 (3rd Cir.1979) ("failure to meet filing deadlines may be excused in certain 'unique circumstances' where the failure is in reliance on an affirmative statement by the court").

The record, however, does not support Garcia's assertion of adverse reliance. After Judge Murphy's clerk responded with the letter of June 20, Garcia wrote another letter to the judge less than a week later, on June 26, seeking reduction of sentence. He did so again on July 7. Furthermore, appellant's counsel in the murder case filed a formal motion to reduce sentence on September 7. Accordingly, even if the June 20 letter from Judge Murphy's chambers had led Garcia to believe at the time that further requests to reduce would be futile, his letters of June 26 and July 7 to Judge Murphy arguably imply a quickly restored belief in the appropriateness of approaching the court by letter; and his September 7 motion filed by counsel in the murder case ostensibly alerted Garcia to the possi-

bility of an alternative, perhaps more appropriate remedy through a formal motion.

Conceivably, of course, Judge Murphy's failure to answer Garcia's June 26 and July 7 letters reinvigorated the impact of the June 20 rejection. But that does not explain why Garcia waited another nine months to file his *pro se* motion to reduce sentence on April 3, 1985. Garcia argues, in effect, that he was unaware of the efficacy of (if not the need for) a formal motion until an inmate told him about it (we know not when); and yet the record reflects that Garcia, through counsel, filed the same kind of motion in his murder case on September 7, 1984, almost seven months before filing his *pro se* motion in the present case. Accordingly, there is little, if any, room for Garcia to argue that the June 20, 1984 letter from Judge Murphy's chambers legitimately lulled him into delaying his Rule 35 motion until April 3, 1985. The trial court, therefore, had no discernible basis for waiving the strict jurisdictional limit of 120 days—in this case, from the date of probation revocation, April 27, 1984 —within which a Rule 35 motion had to be filed. Super.Ct.Crim.R. 35 (b), *supra* note 2.[3]

## III.

■ Garcia argues, alternatively, that his letters of June 7, June 26, and July 7, 1984, should, themselves, be treated as timely filed motions to reduce sentence. He adds that the April 3, 1985 motion was, in reality, an amendment and continuation of those letter motions. Consequently, he says, Judge Murphy's denial of the April 3 motion must be reversed. We discuss in Part IV the question whether Garcia's June and July letters should have been treated as Rule 35 motions to reduce. Even if they should have been so treated, however, Garcia has never presented that argument to the trial court. In any event, on this record, those letters constitute an effort to

---

**3.** In presenting his April 3 motion, Garcia cited Rule 35 but did not alert the trial court to his asserted reliance on the June 20 letter as a reason for filing beyond the 120–day limit. Thus, we could not rule that the trial court retained jurisdiction, despite the clear language

of the rule, unless we were to find plain error affecting Garcia's substantial rights. *Watts v. United States,* 362 A.2d 706 (D.C. 1976) (en banc). On this record, we can find no error at all, let alone plain error.

reduce sentence altogether separate from the effort reflected nine months later in Garcia's April 3 motion. Therefore, as elaborated below, even if these letters should be deemed Rule 35 motions, such treatment—while preserving the Rule 35 issue as to those letters—would not make the April 3 motion itself timely. *See United States v. Hetrick*, 644 F.2d 752, 756 (9th Cir.1980) ("the timely filing of a Rule 35 motion does not give a district court jurisdiction to entertain subsequent, untimely Rule 35 motions. The second motion will not be deemed to relate back to the first motion" (footnote omitted)); *United States v. United States District Court*, 509 F.2d 1352, 1356 (9th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975) (a second motion to reduce, filed three years after prisoner's first timely motion, cannot be deemed timely by relation back to first motion).

▮ Garcia's April 3 motion represented a recognition of his failed efforts nine months earlier. For two reasons, it reflected an abandonment of those attempts in favor of a new, formal approach. In the first place, the motion did not refer to Garcia's earlier letter requests. Second, the April 3 motion argued a different basis for reduction of sentence: whereas the letters expressed his determination to start a new life, the motion based Garcia's request on good behavior in prison. The April motion, therefore, cannot be construed as simply an amendment of a timely motion filed by letter in June or July of 1984. The April motion, rather, was an independent motion to reduce filed far beyond the 120-day limit prescribed by Rule 35(b). The

trial court, therefore, properly denied it for lack of jurisdiction.[4]

## IV.

▮ This does not end the matter, however. Garcia argues, finally, that his letters of June and July 1984 were, in legal effect, independent motions to reduce and that he is entitled to a ruling on them without regard to the consequences of his April 3, 1985 motion. We agree.

Commonly, courts treat letters from prisoners as *pro se* motions to reduce sentence under Super.Ct.Crim.R. 35 (as Judge Ryan did in Garcia's murder case) and under Fed.R.Crim.P. 35. *See, e.g., Sterling v. United States*, 515 A.2d 433 (D.C. 1986); *Gereau*, 603 F.2d at 439–40; *Scott v. United States*, 326 F.2d 343, 344 (8th Cir.1964); *United States v. Smith*, 309 F.2d 144 (2d Cir.1962); *United States v. Bussey*, 543 F.Supp. 981, 982 (E.D.Va.1982); *Farrar v. United States*, 233 F.Supp. 264, 266 (W.D. Wis.1964), *aff'd*, 346 F.2d 375 (7th Cir. 1965); *United States v. Buchanan*, 195 F.Supp. 713, 714 (E.D.Ky.1961). Accordingly, Judge Murphy's denial of Garcia's altogether separate motion of April 3, 1985 does not necessarily preclude a trial court ruling on Garcia's June 7,[5] June 26, and July 7, 1984 letters (which the court received well within the required 120 days). These letters themselves reasonably can be understood, independently, to have asked for Rule 35 relief.

Furthermore, a prisoner is entitled to a ruling on a timely filed Rule 35 motion; that rule provides the trial court "*shall* determine the motion within a reasonable time." Super.Ct.Crim.R. 35(b), *supra* note 2 (emphasis added). The trial court's dis-

---

4. In any event, Garcia's proffered basis for sentence reduction on April 3, 1985—*good prison behavior*—is generally not a valid ground for the trial court to consider. *United States v. Nunzio*, 430 A.2d 1372, 1374–75 (D.C. 1981) (after imposition of sentence, considerations such as prison record and indications of rehabilitation are more properly addressed by parole authorities); *Burrell v. United States*, 332 A.2d 344, 346 (D.C.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975) (post-sentencing developments such as good behavior in prison and rehabilitation are not relevant to sentencing and generally are not considered on motion to re-

duce, but are more appropriately considered by parole authorities).

5. The June 20, 1984 response to Garcia's June 7 letter implies Judge Murphy believed he had no jurisdiction over the request because Judge Ryan's later sentence in the murder case somehow had preempted Judge Murphy's authority to rule in this case. Garcia did not note a timely appeal of this ruling by Judge Murphy. Consequently, that ruling stands, and its merits are not before us.

cretion to decide a Rule 35 motion, therefore, is not discretion to ignore; the court must affirmatively exercise the discretion the law affords. *Cf Dorszynski v. United States*, 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974) (even though sentencing under Federal Youth Corrections Act is discretionary, and the trial court need not explain its decision, the failure to exercise discretion with explicit finding as to whether eligible youth would benefit from FYCA treatment is reversible error); *Brooks v. United States*, 458 A.2d 66 (D.C. 1983) (where trial court was unable to rule during probation period on motion for early discharge and set aside under Federal Youth Corrections Act, the "spirit of the Youth Act" required remand so that trial court would have an affirmative opportunity to exercise discretion).

There is, however, a conceptual problem attributable to the Rule 35 (b) "reasonable time" limitation. More specifically, if considerable time passes before the court rules on a timely filed Rule 35 motion—or if the court fails to act at all—there is the question whether a decision on the merits may be precluded by lapse of time. Some courts, applying the federal rule, have said that the "reasonable time" requirement, like the 120–day limit, is jurisdictional. *United States v. Parrish*, 796 F.2d 920, 923 (7th Cir.1986) (if, on remand, trial court finds two year delay from expiration of 120 days unreasonable, it must vacate earlier grant of reduced sentence for lack of jurisdiction); *United States v. Smith*, 650 F.2d 206, 209 (9th Cir.1981) (if delay in ruling on Rule 35 motion unreasonable, trial court deprived of jurisdiction to consider merits of motion); *United States v. Pollack*, 210 U.S.App.D.C. 130, 133, 655 F.2d 243, 246 (1980) (if court does not act within reasonable time, jurisdiction fails because court prohibited from trespassing upon parole authority). Under this line of cases it follows that, unless the trial court rules soon after the motion is filed (especially if the prisoner files near the end of the 120–day

period), the court must justify the time it took to rule before it deals with the merits of the prisoner's request; otherwise, it may lack jurisdiction to act. It further follows that, if the trial court altogether fails to act on a timely motion, a prisoner's right to a ruling may fail for jurisdictional reasons even though the prisoner is entirely without fault. *See Parrish*, 796 F.2d at 923.

Other courts, also discussing the federal rule, have recognized the possible injustice of calling the "reasonable time" requirement jurisdictional. They have stated that "[o]nly the time within which to file is 'jurisdictional.' " *United States v. House*, 808 F.2d 508, 509 (7th Cir.1986) (motion filed 112 days after judgment; court ruled 86 days later). These courts have been willing to reach the merits of a timely filed motion if the government expressed no concern about the time the trial court took to rule, *id.*, or if the delay itself—no matter how long—was attributable to the court system. *United States v. Krohn*, 700 F.2d 1033, 1038 (5th Cir.1983) (ruling on Rule 35 motion ten months after filing was reasonable when delay was to accommodate other proceedings that could impact upon outcome of sentencing decision); *United States v. Williams*, 573 F.2d 527, 529 (8th Cir.1978) (district court did not lose jurisdiction to rule on timely filed Rule 35 motion 167 days after imposition of sentence when delay was beyond prisoner's control); *see also United States v. Stollings*, 516 F.2d 1287, 1289–90 (4th Cir.1975) (trial court retains jurisdiction for such reasonable period as is necessary, under circumstances, to rule on motion); *Pollack*, 210 U.S.App.D.C. at 134, 655 F.2d at 247 (Wald, J., concurring in result) (14 months from denial of certiorari not necessarily unreasonable); *Diggs v. United States*, 740 F.2d 239, 250 (3d Cir.1984) (Gibbons, J., dissenting) (court administrative error causing 2½ year delay "cannot constitute 'unreasonable delay' for the purpose of Rule 35").[6]

---

**6.** In his dissent in *Diggs v. United States*, 740 F.2d 239, 250 (3d Cir.1984), Judge Gibbons notes that a lengthy period of "reasonable time" need not be inconsistent with the court's obli-

gation to limit Rule 35 considerations to "facts and events that arose before the expiration of the 120–day period of Rule 35."

**1242**

A prisoner's right to a ruling on a Rule 35 motion, coupled with an extremely limited right of appeal from the trial court's exercise of discretion, *see Walden v. United States,* 366 A.2d 1075 (D.C. 1976), cuts substantially in favor of a liberal reading of the "reasonable time" requirement; a prisoner who timely files a Rule 35 motion should not be penalized unfairly because of circumstances beyond his or her control. *See Krohn,* 700 F.2d at 1038; *Williams,* 573 F.2d at 528–29; *Stollings,* 516 F.2d at 1288–89; *Pollack,* 210 U.S.App.D.C. at 134, 655 F.2d at 247 (Wald, J., concurring); *Diggs,* 740 F.2d at 250 (Gibbons, J., dissenting). Having made these preliminary observations, however, we leave it to the trial court, after full briefing and argument, to rule in the first instance on the proper construction and application of Super.Ct.Crim.R. 35.

Accordingly, although we affirm the trial court's denial of Garcia's April 3, 1985 Rule 35 motion for lack of jurisdiction, and although Garcia has failed to take a timely appeal from Judge Murphy's ruling in his letter of June 7, 1984, *see supra* note 5, we cannot properly ignore Garcia's unanswered letters of June 26 and July 7; under the language of the rule, he is entitled to rulings. We therefore treat Garcia's arguments with respect to those letters as a petition for writ of mandamus. *See Bowman v. United States,* 412 A.2d 10, 12 (D.C. 1980) (writ of mandamus properly invoked to compel a court " 'to exercise its authority when it is its duty to do so,' " quoting *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). Thus, we remand for the trial court (1) to treat Garcia's letters of June 26 and July 7, 1984 to Judge Murphy (who is now retired) as motions to reduce sentence pursuant to Super.Ct. Crim.R. 35; (2) to decide whether, under the circumstances, Garcia is entitled to a ruling on the merits at this time; and (3) if he is, to decide whether Garcia is entitled to relief.

*Affirmed in part; remanded for further proceedings.*