UNITED STATES of America, Plaintiff,

v.

Marcelino I. RUBIO, Defendant.

Crim. A. No. 87–12 MMS.

United States District Court,
D. Delaware.

Sept. 26, 1989.

Richard G. Andrews, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

Marcelino I. Rubio, pro se.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Petitioner Marcelino I. Rubio was tried in this Court for possession of marijuana with intent to distribute and possession of cocaine with intent to distribute on January 12–13, 1988. He was convicted on the marijuana charge, and the jury was unable to reach a verdict on the cocaine charge. This Court declared a mistrial as to the cocaine charge and Rubio was retried and convicted on that charge in a second trial on January 25 & 28, 1988. He was sentenced to a ten-year term for the cocaine conviction and a concurrent four-year term for the marijuana conviction. Rubio has moved to vacate his conviction and sentence under 28 U.S.C. § 2255 on two grounds. Petitioner first contends his conviction and sentence for possession of cocaine should be vacated because a federal magistrate presided over the selection and voir dire of the jury that convicted him. Rubio contends that this action was beyond the scope of the magistrate's statutory jurisdiction under 28 U.S.C. § 636(b) (1982) as construed by the United States Supreme Court in *Gomez v. United States*, — U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). Second, Rubio contends the evidence used to convict him at both trials was tainted as the fruit of an illegal search conducted pursuant to a pretextual traffic stop. I address the second issue first.

## I.

Petitioner asserts the evidence used to convict him on both charges is tainted because the arresting officers stopped his vehicle on a pretext in order to search it. He seeks production of certain police documents allegedly revealing that the officers acted on a tip when they pulled over his vehicle. He also seeks expansion of the record and an evidentiary hearing. Because Rubio fails to allege facts supporting his allegation with sufficient specificity to enable this Court to determine whether further proceedings are necessary, his requests for discovery and expansion of the record will be denied as clearly frivolous. Petitioner's request for an evidentiary hearing will also be denied because his allegation of a tip—even if proved—fails to invalidate the search under the Third Circuit Court of Appeals' decision in *United States v. Hawkins*, 811 F.2d 210 (3d Cir.), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

### A. THE FACTS

The facts of this case are set forth in this Court's opinion in *United States v. Padron*, 657 F.Supp. 840, 842–43 (D.Del.1987), *aff'd*, 857 F.2d 1466 (3d Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988). I need restate here only the facts essential to Rubio's claim. On January 14, 1987, petitioner was travelling north from Florida to Boston on Interstate 95 (I–95) in his own automobile driven by Jesus Padron. Corporal Michael Wilbur of the Delaware State Police began to follow the vehicle shortly after it passed through a toll booth on I–95 inside the Delaware border. Corporal Wilbur stated that the vehicle aroused his suspicion because it was driving at an unusually slow rate of speed for that section of I–95.

Corporal Wilbur followed the vehicle for 11 miles on northbound I–95 and when it exited onto Route 13, a four-lane highway with two lanes in either direction, continued to follow it for another 8 miles on south-

bound Route 13. He stated that the vehicle continued at a slow speed in the right lane, causing traffic to back up in the two southbound lanes on Route 13 and forcing other vehicles to pass it in the left lane. He eventually passed the vehicle and continued to observe it in his rearview mirror. While following petitioner's automobile on Route 13, Corporal Wilbur radioed Trooper Albert Homiak for assistance. Trooper Homiak proceeded south on Route 13, approached the vehicle from the rear, and followed it for approximately two miles.

Both officers testified petitioner's vehicle began to weave within its own lane and then swerved three feet into the left lane nearly striking a passing truck. They pulled the vehicle over shortly thereafter in order to investigate the traffic violation. Contrary to the police officers, Jesus Padron, the driver of petitioner's automobile, testified that he drove between 50 and 55 miles per hour and kept up with traffic at all times. He also testified that he did not weave and never left his lane on Route 13.

After the vehicle was stopped, Rubio exited the automobile and approached Trooper Homiak, whose car was located behind petitioner's vehicle. Meanwhile, Corporal Wilbur approached the driver's side and asked Padron for his driver's license and registration through a partially open window. When Padron failed to produce the vehicle's registration, Corporal Wilbur asked him to step outside the car. Corporal Wilbur testified that he detected a "very moderately strong" odor of unsmoked marijuana when Padron opened the car door. Thereafter, both officers searched the car and found 39 pounds of marijuana in plastic bags and 500 grams of cocaine encased in coffee grounds hidden in a rear wheel well. In addition to his convictions on narcotics charges, the driver Padron was given a traffic citation for careless driving in violation of 21 Del.Code § 4176 (1985 Repl.).

Rubio moved to suppress the narcotics found in the car, contending the police stopped his vehicle on a pretext without probable cause and that even if the police had reasonable grounds to effect a traffic stop, they lacked probable cause to search the car. The motion to suppress was denied. *Padron,* 657 F.Supp. at 849. The Court credited the testimony of both officers that they observed the vehicle weaving and crossing into the next lane, nearly striking another vehicle. That observation warranted the officers' conclusion that a traffic violation occurred under the careless driving statute. *Id.* at 846. The Court also credited the testimony of Corporal Wilbur that the vehicle's slow pace caused congested traffic on Route 13, posing a danger to motorists. *Id.* Finally, the Court found that upon detecting the odor of marijuana in the course of investigating the traffic violation, the officers had probable cause to search the vehicle under the automobile exception to the warrant requirement. *Id.* at 849.

Petitioner Rubio now contends that, in approximately May 1989, he received information from an unnamed "ex-policeman" that the Delaware State Police received a tip regarding him. He claims that the police were given his name and description and the make, year, color and license plates of his automobile. Rubio contends Corporal Wilbur and Trooper Homiak were motivated by this alleged tip and not by the traffic violation when they stopped his vehicle. He argues that the allegedly pretextual nature of the traffic stop and the officers' allegedly false testimony at the suppression hearing tainted their search of his vehicle. Rubio moves under section 2255 to compel production of any records in the possession of the Delaware State Police dated January 7–14, 1987 that would indicate that they received information regarding him. He also seeks expansion of the record and an evidentiary hearing.

B. ANALYSIS

Rubio's motion for discovery and expansion of the record will be denied because he fails to set forth facts with sufficient specificity to warrant discovery. Under Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255 (1982), a petitioner may seek discovery under the Federal Rules of Civil Procedure or the Federal

Rules of Criminal Procedure "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." The Advisory Committee made clear that prior approval of the court is necessary for discovery in post-conviction proceedings to prevent abuse. *See* Rule 6, Rules Governing Section 2254 Proceedings for the United States District Courts, 28 U.S.C. § 2254 (1982) advisory committee note (incorporated by reference in Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255 (1982) advisory committee note).

The Court of Appeals for the Third Circuit held in *Mayberry v. Petsock*, 821 F.2d 179 (3d Cir.1987), a section 2254 case, that "discovery ... should not be available to a habeas petitioner ... unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response ... to determine if further proceedings are appropriate." *Id.* at 186 (citation omitted). Although *Mayberry* was decided in the context of a writ of habeas corpus under section 2254, its principles are equally applicable to motions under section 2255. *See United States v. Williams*, 615 F.2d 585, 591 (3d Cir.1980) ("[G]iven the similarity between section 2254 and section 2255 actions and the Court's attempt to provide similar relief under each, the logic of the Supreme Court's recent pronouncements in the section 2254 may well carry over into section 2255 cases"). In *Mayberry*, the appellate court found that a habeas petitioner's allegations were too vague and general to warrant conducting an evidentiary hearing or placing the burden of discovery on the state:

> For example, although he contends that the state officials withheld his legal papers, he does not state who withheld such papers, when and where they were withheld, whether those papers consisted of putative appeal papers, or whether they were incoming papers to which he was not given access. Similarly he contends that state officials refused to allow him to prepare or file appeal briefs. Again he states nothing with respect to

the identity of the person or persons, and more particularly when this conduct took place.

*Mayberry*, 821 F.2d at 186.

■ Petitioner Rubio merely alleges he recently received information "through an ex-policeman" that, prior to his arrest over two and one-half years ago, the Delaware State Police received a tip including his name and description and a description of his vehicle. Rubio fails to identify the "ex-policeman" who gave him this information. He does not set forth how and where he came into contact with this "ex-policeman." Nor does he explain how this "ex-policeman" learned of his incarceration in Florida and the circumstances surrounding his arrest over two and one-half years ago in Delaware. Further, Rubio fails to state the source of the tip and the manner in which it was received by the Delaware State Police. This Court concludes Rubio's mere allegation that an unnamed former police officer informed him of the existence of a tip received by the Delaware State Police over two and one-half years ago is clearly frivolous and insufficient to constitute "good cause shown" necessary to warrant discovery under Rule 6(a) or expansion of the record. *Id.; see also Moore v. United States*, 571 F.2d 179, 184 (3d Cir.1978) (holding the allegations of pro se section 2255 applicants whose claims are dismissed without expanding the record or conducting an evidentiary hearing must be taken as true unless clearly frivolous).

Rubio's motion for an evidentiary hearing will also be denied. Even if petitioner's tip allegations are true, the fact that Corporal Wilbur and Trooper Homiak were motivated by a tip rather than a traffic violation when they stopped petitioner's automobile on Route 13 does not taint their subsequent search of the vehicle. The legality of a stop should be judged by objective facts and not

> the officers' subjective intent, even if the police officers' professed reason for the search is incredible or insufficient. The search will be legal if the objective circumstances known to the officers would

have justified a reasonable officer in taking these actions.

*United States v. Jones,* 657 F.Supp. 492, 497 (W.D.Pa.1987) (citing *United States v. Hawkins,* 811 F.2d 210 (3d Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987)); *see also Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978).

█ A pretextual stop does not render an otherwise constitutional search invalid even when the court declines to credit the arresting officers' testimony that the sole reason for the stop was a traffic violation. *United States v. Hawkins,* 811 F.2d 210 (3d Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). In *Hawkins,* two police officers followed an automobile from a suspected narcotics location. The car committed several traffic violations, but the officers did not stop it. *Id.* at 212. When the car parked, the officers "parked in back of the car, turned on the van's high beams, got out of the van ... approached the car.... [and] identified themselves...." *Id.* The district court declined to credit the officers' testimony that the sole motivation for the stop was a traffic violation, and noted that the officers failed to issue a ticket to the driver of the vehicle. *Id.* at 213 & n. 3. It did, however, find that there was reasonable suspicion sufficient to justify a stop under the standards of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* at 213. The appellate court held that the stop was valid under *Terry* and that the search was also valid despite the officers' false testimony and the pretextual nature of the stop. *Id.* at 213–15. Stating that "[t]he laudible [sic] objective of discouraging police perjury does not warrant such a draconian sanction as exclusion," the Court of Appeals held: "[T]he fact that a pretext was given does not render invalid an otherwise constitutional search." *Id.* at 215 (footnote omitted).

█ Even taking as true Rubio's allegation that Corporal Wilbur and Trooper Homiak were acting on a tip and then testified falsely at the suppression hearing, those facts alone do not invalidate their otherwise valid search of petitioner's automobile. A traffic stop is "more analogous to a so-called '*Terry* stop' than to a formal arrest," *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984), and thus requires only reasonable suspicion. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). A valid traffic stop or stop and frisk under *Terry* may escalate into a full-scale arrest or search if probable cause arises in the course of the encounter. *E.g., Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (Valid investigative stop and frisk produced a weapon which gave probable cause to arrest and conduct full search incident to arrest).

This Court previously ruled that the officers had probable cause to search the vehicle once Corporal Wilbur detected the odor of unsmoked marijuana. *Padron,* 657 F.Supp. at 848–49. Consequently, if the stop was valid in light of the objective facts known to the officers at the time, their search was also valid. This Court has already held that facts existed which justified the officers in effecting the traffic stop. *Id.* at 846 (crediting the testimony of both officers that they observed the car weave and swerve into the next lane warranting a stop to investigate the traffic violation).[1] Because there existed objective, articulable facts in the knowledge of the officers at the time they pulled over petitioner's vehicle, the traffic stop was valid despite the fact that they may have been actually motivated by a tip.

Petitioner Rubio's motion under section 2255 for an evidentiary hearing based on his allegation that the arresting officers were acting on a tip will be denied.

## II.

Petitioner also challenges his conviction for possession of cocaine on the grounds

---

1. The driver of petitioner's vehicle was in fact issued a traffic citation under Delaware's careless driving statute. *Padron,* 657 F.Supp. at 846.

that the Court improperly delegated selection and voir dire of the jury to the federal magistrate. Petitioner argues that presiding over the selection and voir dire of a jury in a felony trial is beyond the statutory jurisdiction of the magistrate under 28 U.S.C. § 636(b) (1982) as construed by the United States Supreme Court in *Gomez v. United States,* —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989).

In *Gomez,* the Supreme Court held section 636(b) does not authorize federal magistrates to conduct jury selection and voir dire in felony trials.[2] The questions before this Court are (1) whether Rubio's failure to raise the issue at trial or on direct appeal precludes his raising it for the first time in his section 2255 motion,[3] and if he is not barred from raising the issue, (2) whether the Supreme Court's decision in *Gomez* should be applied retroactively to his case.

## A. PROCEDURAL DEFAULT

■ The United States Supreme Court spoke directly to the question of when an issue may be raised for the first time in a collateral proceeding under section 2255 in *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). *Frady* involved a collateral proceeding under section 2255 in which the petitioner challenged

2. The Court did not reach the issue of whether Congress *could* constitutionally authorize magistrates to preside over voir dire. It merely found that under § 636(b) Congress did not in fact grant magistrates the authority to do so. Since the Court found that the Act did not provide magistrates with such jurisdiction, it limited its opinion to its construction of the statute. *Gomez,* 109 S.Ct. at 2241.

3. Not only did Rubio fail to object to the delegation of voir dire to the magistrate, but he consented to the procedure on the record:

THE MAGISTRATE: "We wanted to get your consent on the record, Mr. Rubio, for my presiding over the jury selection in the absence of Judge Schwartz, which your attorney had earlier consented to. Is that something you agree to, sir?"
THE DEFENDANT: "Yes, I do."
Since I interpret the Supreme Court's decision in *Gomez* to indicate that the consent of the defendant is insufficient to confer jurisdiction upon the magistrate to conduct voir dire in a felony trial, Rubio's consent is relevant only to the issue of whether there was a procedural default.

an erroneous jury instruction for the first time, contrary to the requirement in Rule 30 of the Federal Rules of Criminal Procedure that objections to jury instructions be raised before the jury retires. *Id.* at 162–63, 102 S.Ct. at 1591–92. In *Frady,* the Supreme Court held that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166, 102 S.Ct. at 1593. The Court went on to determine that the proper standard was the "cause and actual prejudice" standard: "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.* at 167–68, 102 S.Ct. at 1594.

Citing *Frady,* the Third Circuit panel in *Felix v. Virgin Islands Government,* 702 F.2d 54 (3d Cir.1983) (per curiam), declined to reach the merits of a section 2254 petition challenging the determination of petitioner's competency to stand trial, the adequacy of jury instructions, sufficiency of the evidence, and improper statements by one of the jurors during trial because peti-

Section 636 authorizes magistrates to hear pretrial matters even in the absence of consent of the parties, 28 U.S.C. § 636(b)(1) (1982), and to conduct civil and criminal misdemeanor trials with the consent of the parties. *Id.* at § 636(a)(3) (incorporating by reference 18 U.S.C. § 3401 (1982)); *id.* at § 636(c)(1). In *Gomez,* the Court noted jury selection is a "critical stage of the criminal proceeding," *Gomez,* 109 S.Ct. at 2246, and held that it should not be considered a pretrial matter under § 636(b)(1). *Id.* Thus the magistrate could not conduct voir dire in a felony trial without the consent of the parties. The Court also held that "the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial." *Id.* at 2245 (footnote omitted). Thus conducting voir dire does not fall within those matters over which the magistrate is empowered to preside if the parties consent. Hence, after the Court's decision in *Gomez,* it appears that the magistrate may not conduct jury voir dire in a felony trial under the statute regardless of whether the parties consent.

tioner made no attempt to demonstrate cause and actual prejudice. *Id.* at 56–57 & nn. 3 & 4.

Applying the cause and actual prejudice standard to this case,[4] I find that petitioner's failure to object to the jury empanelment at trial or on direct appeal bars him from raising the issue for the first time on collateral review.[5] Petitioner does not attempt to show cause for his failure to raise the issue at trial or on direct appeal. His showing of prejudice is limited to the fact that the jury in his first trial, which was empaneled before the trial judge, failed to reach a verdict as to the cocaine charge, but the second jury convicted him.[6] Although Rubio alleges that "[t]he atmosphere of the voir dire [before the magis-

trate] was completely different than the one of the first trial," Petitioner's Memorandum of Law in Support of His Motion Under 28 U.S.C. § 2255, he fails to specify any prejudicial statement or action by the magistrate, counsel or potential jurors. Because of his failure to show cause or actual prejudice due to his failure to object to the empanelment of the jury before the magistrate at trial or on direct appeal, petitioner is barred from raising the issue for the first time on a motion under section 2255.

## B. RETROACTIVE EFFECT OF *GOMEZ* TO PETITIONER'S CLAIM

Ordinarily discussion should cease with this Court's finding that petitioner's

---

**4.** In so holding, I do not ignore two decisions of the appellate court declining to apply *Frady*'s cause and actual prejudice standard in § 2255 motions challenging sentencing. *See Diggs v. United States,* 740 F.2d 239, 244 (3d Cir.1984); *United States v. Baylin,* 696 F.2d 1030 (3d Cir. 1982). Both *Diggs* and *Baylin* involve errors occurring during sentencing and post-sentencing proceedings. In *Diggs,* the appeals court based its decision to apply a plain error standard rather than the cause and actual prejudice standard in the sentencing context. *Diggs,* 740 F.2d at 244 ("Here ... the error asserted was in sentencing and post-sentencing proceedings, where we have said the rules of criminal procedure are not ... well marked").

Petitioner's claimed error, which involves pretrial proceedings, is more closely analogous to the facts in *Felix* than to a challenge of sentencing procedures. When alleged errors occur at or before trial, petitioner has ample opportunity to challenge them during trial and prior to conviction. This is not the case when errors occur during sentencing proceedings. Moreover, when a § 2255 motion challenges trial and pretrial proceedings, finality concerns become more important because the conviction itself— as opposed to the propriety of the sentence—is being challenged. The Supreme Court in *Frady* emphasized the importance of finality when it formulated the stricter cause and actual prejudice standard:

> Because it was intended for use on direct appeal, ... the "plain error" standard is out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal.... Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction

collateral attacks. To the contrary, a final judgment commands respect.

*Frady,* 456 U.S. at 164–65, 102 S.Ct. at 1592–93.

**5.** In so holding, this Court is supported by the reasoning of two pre-*Gomez* circuit court decisions in which the courts declined to determine the jurisdiction of magistrates to preside over voir dire on direct appeal because of failure to object below. In *United States v. Rivera–Sola,* 713 F.2d 866, 874 (1st Cir.1983), the Court of Appeals for the First Circuit on direct appeal declined to reach the merits and reviewed for plain error under Fed.R.Crim.P. 52(b) because there had been no objection at trial. The court found no error because petitioner failed to demonstrate prejudice.

In a similar case, the Court of Appeals for the Second Circuit held on direct appeal that the defendant waived his right to challenge the role of the magistrate when he failed to make a contemporaneous objection:

> [N]o contemporaneous objection was made to the jury selection process. We, therefore, see no reason to consider this objection for the first time on appeal. What is more, since a defendant may waive his right to be present during the period of often routine voir dire questioning, we believe it would be anomalous to hold that a defendant could not also waive any defect relating to the judicial officer who presided over the voir dire of petit jurors.

*United States v. DeFiore,* 720 F.2d 757, 764 (2d Cir.1983), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984).

**6.** "Petitioner's right to a presumption of innocence was clearly prejudiced as the previous impartial jury, properly and legally selected, did not find him guilty." Petitioner's Memorandum of Law in Support of his Motion Under 28 U.S.C. § 2255.

claim is barred by reason of his procedural default. Nonetheless, I shall proceed with an analysis of the retroactive effect of the *Gomez* decision to Rubio's claim on collateral review in the event that the appellate court should disagree with my conclusion as to petitioner's procedural default. I hold that the Supreme Court's decision in *Gomez* should not be applied retroactively to Rubio's conviction on collateral review.

Rubio's conviction became final when the Supreme Court denied his petition for certiorari on November 28, 1988—seven months prior to its decision in *Gomez. United States v. Rubio*, ⎯ U.S. ⎯, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988). It is therefore necessary to determine whether the rule announced in *Gomez* should be applied retroactively to Rubio in his collateral appeal.

On February 22, 1989, the Court decided *Teague v. Lane*, ⎯ U.S. ⎯, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), in which it "clarif[ied] how the question of retroactivity should be resolved for cases on collateral review." *Id.* 109 S.Ct. at 1069. *Teague* involved a collateral challenge to the conviction of a black defendant by an all-white Illinois jury after the prosecutor used his 10 peremptory challenges to strike blacks from the jury. *Id.* at 1065. Petitioner filed a writ of habeas corpus under section 2254 and asked the Court to extend the sixth amendment's fair cross section requirement to petit juries. A plurality [7] of the Court refused to reach the merits, holding that a new rule should not be applied retroactively on collateral review: "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 1075 (footnote omitted); *see also id.* at 1069.

The Court elucidated two exceptions. The first applies new rules retroactively if they place " 'certain kinds of primary, private individual conduct beyond the power

of the criminal lawmaking authority to proscribe,' " *Id.* at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.)). The second is an exception for " 'those procedures that ... are implicit in the concept of ordered liberty.' " *Id.* 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.)). The plurality expressly limited the scope of this second exception to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* 109 S.Ct. at 1076–77.

In *Teague*, the plurality stated that "[r]etroactivity is properly treated as a threshold question...." *Id.* at 1069. I must apply the principles set out in *Teague* to determine the retroactive effect of *Gomez* on Rubio's collateral claim.

First, retroactivity is a concern only where a party seeks to apply a new rule of law. Noting that "[i]t is ... often difficult to determine when a case announces a new rule," the Court in *Teague* defined "new rule of law" as one in which "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 109 S.Ct. at 1070 (citation omitted) (emphasis in original). Put another way, a new rule might be defined as one that does not "arguably follow from pre-existing precedents." *Truesdale v. Aiken*, 480 U.S. 527, 529, 107 S.Ct. 1394, 1395, 94 L.Ed.2d 539 (1987) (Powell, J., dissenting).

Prior to its decision in *Gomez*, the Court had not spoken to the issue of federal magistrates' jurisdiction to preside over jury selection, and there was no definitive authority on the issue. In fact, the Court granted certiorari in *Gomez* in order to resolve a division among the circuit courts. *Compare United States v. Garcia*, 848 F.2d 1324 (2d Cir.1988), *rev'd sub nom. Gomez v. United States*, ⎯ U.S. ⎯, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (holding

---

7. Justice White did not join the plurality, but noted in his separate opinion that the plurality's approach "is an acceptable application in collateral proceedings of the theories embraced by the Court in cases dealing with direct review, and I concur in the result." *Teague*, 109 S.Ct. at 1079 (White, J., concurring).

that magistrates have jurisdiction to conduct voir dire in felony trials), *United States v. Bezold,* 760 F.2d 999 (9th Cir. 1985), *cert. denied* 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986) (same), *and United States v. Peacock,* 761 F.2d 1313 (9th Cir.), *cert. denied* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985) (same) *with United States v. Trice,* 864 F.2d 1421 (8th Cir.1988) (magistrates lack jurisdiction) *and United States v. Ford,* 824 F.2d 1430 (5th Cir.1987) (en banc), *cert. denied,* 484 U.S. 1034, 108 S.Ct. 741, 98 L.Ed.2d 776 (1988) (same).

Clearly, precedent did not dictate prior to *Gomez* that magistrates are without authority to conduct jury selection and voir dire. In *Gomez,* the Court chronicled Congress' steady expansion of magistrates' statutory powers, *Gomez,* 109 S.Ct. at 2242–45, and quoted from a congressional committee report encouraging district judges to "experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of 'pretrial matters....'" *Id.* at 2244, *quoting* H.R.Rep. No. 94–1609, at 12, U.S. Code Cong. & Admin.News 1976, at 6162, 6172. Thus the trend prior to *Gomez* was toward expanding—not limiting—the authority of the magistrates. In light of this trend and the division among the circuit courts prior to the Court's decision, I conclude that the Court announced a new rule of law in *Gomez.*

In *Teague* the Court held that new rules of law would not be applied to cases on collateral review, unless the rule fits into one of the Court's exceptions. Petitioner must show that the rule in *Gomez* either implicates primary behavior or is a "new procedur[al rule] without which the likelihood of an accurate conviction is seriously diminished." *Teague,* 109 S.Ct. at 1076–77. The holding in *Gomez* that magistrates are without statutory jurisdiction to preside over voir dire in felony trials clearly does not affect primary behavior and thus does not fall within the first exception. I am equally convinced that the rule fails to meet the requirements of the second exception.

As noted above, *Teague* involved a collateral challenge to the conviction of a black defendant by an all-white Illinois jury after the prosecutor used his 10 peremptory challenges to strike blacks from the jury. *Id.* at 1065. Petitioner filed a writ of habeas corpus under section 2254 and asked the Court to extend the sixth amendment's fair cross section requirement to petit juries. Emphasizing that the lack of a fair cross section would not "seriously diminish the likelihood of obtaining an accurate conviction," the plurality held that the absence of a fair cross section did not fall under the second exception. *Id.* at 1077 ("[A] rule requiring that petit juries be composed of a fair cross section of the community would not be a 'bedrock procedural element' that would be retroactively applied under the second exception....").

Rubio's claim cannot be meaningfully distinguished from that present in *Teague.* Both involve the same issue: challenges to the propriety of the jury empanelment. Whereas the petitioner in *Teague* raised a sixth amendment challenge to the propriety of the jury empanelment, Rubio's claim is based upon the Court's interpretation of a statute. Empanelment before a federal magistrate is no more likely to impact upon the accuracy of conviction than the use of peremptory challenges to strike jurors of the same race as the defendant. Surely if the constitutional claim raised by the petitioner in *Teague* did not implicate "fundamental fairness" as defined by the plurality, the statutory claim before me also fails to come within the second exception. Consequently, the Court's opinion in *Gomez* should not be applied retroactively to petitioner's claim on collateral review.

The finding that *Gomez* should not be applied retroactively to cases on collateral review finds additional support from the widespread use by the district courts of magistrates to conduct jury selection and voir dire prior to the Court's decision in *Gomez.* As long ago as 1973, a study conducted by the Judicial Conference's Committee on the Administration of the Federal Magistrate System found that 9 out of 87 responding districts authorized magistrates to conduct voir dire. Brief for

the United States, *Gomez v. United States,* — U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (citing Judicial Conference, Report of the Subcommittee Assigned to Study the Conduct of Voir Dire by Federal Magistrates 2–4 (1973)). By the time of the Court's decision in *Gomez,* no less than 51 districts had local rules expressly providing magistrates with authority to conduct voir dire. Brief for the United States, *Gomez v. United States,* — U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), *see, e.g.,* Local Magistrate Rules for the United States District Court for the District of Delaware, Rule 1(i)(6) (effective as amended March 1, 1985) ("*Other duties.* The Magistrate is also authorized to— ... (6) Conduct voir dire and select petit juries for the Court....").[8] Moreover, the Legal Manual for United States Magistrates specifically included the "[c]onduct of voir dire and selection of juries for district judges" as a duty that may be assigned to magistrates under § 636(b). Legal Manual for United States Magistrates § 3.10(3).

Given that the practice of delegating voir dire to magistrates was approved in some districts as long ago as 1973 and in a substantial number of districts as recently as last year, it is obvious that retroactive application of the rule announced in *Gomez* to cases on collateral review would greatly burden the federal court system.

An order will be entered denying petitioner's motion for relief under 28 U.S.C. § 2255.

---

**8.** It is acknowledged that, while districts may have local rules permitting magistrates to conduct voir dire in felony cases, this is not necessarily the ordinary practice in all such districts. In fact, the magistrate's presiding over the selection of the jury in Rubio's trial was the exception rather than the usual practice in the Delaware District.

By the same token, delegation of voir dire is the practice in some districts. For example, the Court itself noted that it was the practice in the Eastern District of New York. *See Gomez,* 109 S.Ct. at 2239.